[L. A. No. 19242.   In Bank.   Nov. 27, 1945.]

FRED W. KROGER, Respondent, v. RAE TRUITT, as Administratrix, etc., Appellant.

Haight, Trippet & Syvertson and Lyle C. Newcomer for Appellant.

Frank M. Gunter and Oscar C. Sattinger for Respondent.

SHENK, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff in an action to impress a trust on certain property of the Estate of Charles C. Truitt, Deceased.

In his lifetime Charles C. Truitt was president of Dried Food Products Company which specialized in manufacturing dried eggs. The company issued both preferred and common stock. A portion of the stock was transferable without restrictions imposed by the Commissioner of Corporations, and a portion was in escrow and could not be sold without his permission. The unrestricted stock is herein called "free" stock and the restricted stock, "escrow" stock. The company occasionally encountered financial difficulties and Truitt met them by "borrowing" from various stockholders free stock which could be sold, on his promise to replace it by a transfer of escrow stock. Wm. H. Fisher was an employee of the company and owned some of its preferred stock. On January 9, 1936, Fisher delivered 75 shares of his preferred stock to Truitt for which he received the latter's personal receipt and promise to return a like amount within ninety days. Concurrently Truitt signed a request to the Commissioner of Corporations for the transfer of 75 shares of common stock if preferred stock was not returned within the stated time. Walter W. Kroger, an officer of the company, signed the receipt as guarantor. Subsequently the par value of the stock was reduced from $10 to $1.00 per share, and Fisher became entitled to the return of 750 shares of the stock. Fisher and Truitt were not in harmony and Truitt requested Walter W. Kroger to buy out Fisher's interest in the company. On August 27, 1937, Fisher assigned to Kroger his title and interest in the stock, and on March 23, 1940, Kroger assigned it to his brother, Fred W. Kroger, the plaintiff herein. The obligation was never fulfilled.

On April 9, 1938, Truitt died. F. C. Hendrix, father of his widow, was appointed administrator of his estate, and publication of notice to creditors commenced on May 27, 1938. Hendrix died on July 16, 1939, and on the following November 21st Rae Truitt, the widow of the deceased Truitt, and sole heir and distributee of his estate, herein referred to as the defendant, was appointed administratrix.

While Hendrix was administering the estate he prepared a claim for Walter W. Kroger's signature, which was signed and acknowledged by Kroger before a notary on November

25, 1938, and was thereupon received by Hendrix with the statement to Kroger that his stock would be returned to him in due time.

The estate held 17,145 shares of the escrow stock. The defendant's efforts as administratrix were devoted principally to an attempt to liquidate her claims against the Dried Food Products Company. She advised Kroger (Walter) that he would receive his 750 shares of stock. In an open stockholders' meeting held October 27, 1941, at which the defendant was present, the question was raised concerning the return of escrow stock for the free stock loaned to decedent, the records of which "got lost in the shuffle some place." Mr. Parr, attorney at that time for the defendant, stated to the stockholders at that meeting that Mrs. Truitt held in the estate 17,145 shares of stock issued in decedent's name. He said: "We are quite aware of that fact, that stock shown in the settlement of the estate must be delivered to various persons who traded with Mr. Truitt, gave him free stock in exchange for his promise to transfer from the escrow. We will have to keep those promises and will keep them. . . . If there is any evidence that it is authentic . . . they will receive the stock upon the closing of the estate." At a meeting of stockholders on November 3, 1941, Mr. Parr repeated his assurances saying: "I stated the other night that those people about whom we knew would most definitely receive stock . . . and I assured them, upon closing of this estate, they would receive stock. And I now wish to assure everyone else here who has claims for stock in that estate that without their being really able to prove their claim, but on reasonable showing that they have stock coming, they will receive it. You are quite true when you say the 'hand of death intervened,' and Mr. Truitt couldn't carry out all promises and my executors will try to carry them out. Those promises will be settled . . . and since Mrs. Truitt is the sole legatee, if she states to the court she wants that distributed to this person or that person I think you will agree it will be so distributed."

February 4, 1942, the board of directors of Dried Food Products Company adopted a resolution authorizing an offer of settlement to the defendant in liquidation of her claims against that company. The resolution provided for an offer of payment to the administratrix of a sum to be agreed upon in full settlement of all claims and demands, provided the

Truitt estate caused to be transferred to parties entitled thereto the stock owing on account of written memoranda issued by Charles C. Truitt in his lifetime and which constituted the evidence of loans to him by various persons of free or escrow stock of Dried Food Products Company, "it being the intention hereby to provide that as part of the settlement . . . said estate likewise fulfill its obligations for the delivery of such stock or money under the outstanding written obligations of said Charles C. Truitt . . . ," but limiting the maximum settlement including shares claimed by former employees to $20,000. Defendant was informed of the contents of the resolution. Settlement was finally reached at a figure of $43,500. A contract of settlement was dated August 12, 1942. It contained the provision that the defendant as administratrix, named as First Party, "will pay all claims now or hereafter filed or presented against the Estate of Charles C. Truitt for stock of Dried Food Products Co. agreed to be delivered by said Charles C. Truitt to any such claimant excepting as to any such to which she, as such Administratrix, shall have a bona fide defense. Said claims which have been disclosed by First Party to Second Party are the following:" The names of fifteen former stockholders were listed, including Walter W. Kroger (representing Fisher's 750 shares) with the number of shares claimed by each, aggregating 11,802 shares. The evidence discloses that it was contemplated by the parties that since the company had waived the statute of limitations as to the defendant's claim against it, it was not considered that any defense she might have to the discharge of those listed obligations included the defense of the statute of limitations. The agreement was submitted to the Commissioner of Corporations who released the stock for transfer. About September 25, 1942, the probate court on defendant's petition approved the compromise agreement for the discharge of the obligations listed, finding that the discharge thereof was for the advantage, benefit and best interests of the estate. The court ordered the administratrix to do and perform all matters and things provided by the compromise agreement. Upon such approval and order the company paid the sum of $43,500 to the defendant. Later in the fall of 1942 the defendant wrote to Walter Kroger asking what he would take in settlement of his claim. No objection was made by her as to the

time element. On February 10, 1943, after she was informed of Walter Kroger's assignment to the plaintiff, the defendant rejected his claim. Subsequent to the date of the agreement and the approval thereof she transferred stock to and settled the claims of some of the other stockholders. In July, 1943, by decree of partial distribution the defendant received 5,000 of the original 17,145 shares, on her representation to the probate court that sufficient shares remained to discharge the agreement of August 12, 1942.

On May 3, 1943, which was three months after the rejection of his demand for the stock, and less than nine months from the date of the agreement, the plaintiff filed the present action against Rae Truitt in both her representative and individual capacities. The defendant interposed the defenses of the statute of limitations and of laches. The trial court found that there existed between Walter Kroger and the deceased a relationship of trust and confidence; that the decedent occupied a trust relationship in regard to the stock loaned to him, and that at the time of his death he held a sufficient number of shares of stock to meet the obligations of the trust. The court also found that the defendant signed the agreement of August 12, 1942, fixing the total so held in trust at 11,802 shares, and in accordance with which she received a consideration of $43,500 in exchange in part for her promise to carry out the trust; that her agreement was made for the express benefit of the persons who were the beneficial owners of the shares held in trust by Truitt; that the stock was released by the Commissioner of Corporations for transfer to the persons so entitled; that the agreement was approved by the probate court for the purpose of permitting the defendant to carry out its terms and that by reason of the acts of the defendant the plaintiff and his assignor at all times and until February 10, 1943, believed that the claim for stock had been fully approved, acknowledged and assumed by the defendant. It was concluded that no claim was necessary to be filed in the estate in order to impress a trust; that the action was not barred by the statute of limitations or by laches; that the result of the retention of the trust shares by the defendant would be to permit her by her own conduct to obtain an unjust enrichment. Judgment for the plaintiff followed.

The statement of the foregoing facts and supported findings alone would appear to be a sufficient answer to any

possible contention of the defendant on this appeal. They are sufficient to establish the creation of the trust in the decedent's lifetime and to identify the stock held for the purpose of discharging the obligations. But, says the defendant, if the trust continued after the death of Truitt, its nature from that time was that of an involunary trust, that is, one arising by operation of law, and that the defendant therefore was an involuntary or constructive trustee; that since no repudiation was required to start the statute in operation, the time within which the plaintiff could bring an action commenced at the date of Truitt's death, and the action, having been brought more than four years thereafter, was barred.

*Norton* v. *Bassett*, 154 Cal. 411 [97 P. 894, 129 Am.St. Rep. 162], relied on by the defendant, involved an effort to impress an alleged resulting trust on real property created in the lifetime of the elder Bassett, and to hold the defendant Bassett, his minor son and distributee, as trustee. The son promised orally to make an accounting when he became of age but repudiated his promise and when suit was filed interposed the defense of the statute of limitations. The court followed the rule relied on by the defendant here, that since the trust did not arise by reason of any agreement of the defendant, since there were no contractual relations between the litigating parties, since there was no written recognition of the trust by the defendant, he was but an involuntary trustee, the cause of action accrued at the date of the elder Bassett's death, and the statute commenced to run at that time.

*Norton* v. *Bassett* undoubtedly states the general rule in the absence of the specific factors therein mentioned. But, without distinguishing cases involving real from cases involving personal property, those facts are not absent from the present case. Here the defendant both orally and in writing acknowledged the validity of the Kroger beneficial interest in the stock. She recognized the validity of the trust by entering into a written agreement whereby she promised to transfer a certain number of shares to each of the persons named therein. She represented in writing to the Commissioner of Corporations that a release of the stock was sought for the purpose of carrying out that agreement. She petitioned the probate court for approval of the agreement

to consummate the transfer which she represented was for the best interests of the estate, that is, that the estate could acquire an advantageous liquidation of its claim against the company only on the administratrix's promise to transfer the shares to the recognized beneficiaries of the trust. The factors which in the Norton case would have given rise to an exception to the rule there applied operate here to change the defendant's relation as a constructive trustee to that of an express trustee. By word and act she indicated with reasonable certainty her intention to hold the specified shares of stock for the purpose of transferring them to designated beneficiaries. (Civ. Code, § 2221.) The written agreement approved by the probate court and given in part for the $43,500 received by the administratrix was effective to create an express trust to hold the shares released for the benefit of the former owners of stock loaned to the decedent. There is no contention that the action was filed too late if the agreement of August 12, 1942, created an express trust.

It is also the contention of the defendant, with reliance on *Estate of Lucas,* 23 Cal.2d 454 [144 P.2d 340] ; *Estate of Cates,* 195 Cal. 319 [232 P. 972] ; and similar cases, that an administratrix cannot waive the statute of limitations. There are at least two answers to the contenion. The cases relied on involved actions on claims against an estate. The present action is not on the claim, but to impress a trust on the stock held by the estate, and the filing of a claim is unnecessary. (*Newport* v. *Hatton,* 195 Cal. 132, 150 [231 P. 987] ; *Porter* v. *Van Denburgh,* 15 Cal.2d 173 [99 P.2d 265].) Secondly, in view of the facts establishing an express trust as to the administratrix, and the timely filing of an action to enforce it, there can arise no question of waiver of the statute. Furthermore, pursuant to the decision in *Estate of Lucas,* if the facts raised a doubt as to the applicability of the statute which could not be settled without litigation, the representative might enter into a compromise with the creditor and the court had power to approve it. Appropriate disposition of the present case may be said also to rest on that state of the facts.

Also it should be noted that the defendant is the exclusive owner of the entire estate, and that the plaintiff and the other beneficiaries of her express agreement and approved compromise are the only claimants to any of the assets of the estate. Whether the agreement and compromise be called an

express trust or a waiver of the statute, its effect was not inimical to the interests of the estate. On the contrary the facts demonstrate that it was of benefit to the estate and to the defendant personally. In *Holland Bank* v. *Brockman,* 52 Idaho 324 [14 P.2d 621], under somewhat similar circumstances, it was held that payments of mortgage interest beyond the statutory period constituted an acknowledgment by the administratrix which was sufficient to preclude reliance on the statute of limitations. The court said: ''Here the administratrix is the exclusive owner of the entire estate, respondent being the only apparent creditor. And while it is true, although one and the same person, Hulda Brockman, the individual, was in contemplation of law distinguished from Hulda Brockman, the official whose duty it was to administer the estate according to law and who could have been without authority to favor one creditor's claim to the detriment of another's, manifestly, there is no one who can charge injury and demand relief therefor. In the absence of creditors, where the personal representative is the sole owner and beneficiary of the estate, such representative can handle the estate as he pleases, for only to himself is he accountable, there being no one to say him Nay! . . . (citing cases) . . . Nor can Hulda Brockman, the individual, take refuge behind the skirts of Hulda Brockman, the administratrix.''

So here, as concluded by the trial court, all of the elements are present which would make it inequitable for the defendant to repudiate her agreement of compromise and settlement. By her own conduct she indicated that it would be fulfilled without regard to the possible effect of the statute of limitations on the original trust relationship between the decedent and the stockholders.

Other points do not require discussion.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied December 20, 1945.