[Civ. No. 6203.   Fourth Dist.   Jan. 20, 1960.]

YUCCA WATER COMPANY, LTD. (a Corporation), Appellant, v. AL ANDERSON, Respondent.

John E. Sisson and Guy T. Graves for Appellant.

Gibson, Dunn & Crutcher and Richard L. Wells for Respondent.

MONROE, J. pro tem.*—The plaintiff and appellant brought this action for the specific performance of a contract between the parties dated January 12, 1949, relative to the furnishing of water for domestic purposes for use upon property which defendant and respondent intended to subdivide and sell. Plaintiff also sought damages for alleged breach of the contract. The issues were determined in favor of the defendant and judgment was rendered in his favor and from that judgment the plaintiff appeals.

Appellant assigns rulings of the trial court admitting evidence concerning the transactions which culminated in the execution of the contract as error, for the reason that it is claimed the contract is clear and unambiguous; that it is unambiguous as a matter of law; and that all prior negotiations are merged therein.

The contract provides in part as follows:

"WHEREAS, Anderson is interested in certain real property consisting of the following:

Tract or tracts of land in Section 1, Township 1 South, Range 5 East, San Bernardino Base and Meridian.

Said property being adjoining and contiguous to property now being supplied with water, as aforesaid, by Water Company, and

"WHEREAS, Anderson desires to obtain for such real property, water from the Water Company, and Water Company has agreed to furnish water for such real property under the following terms, covenants and conditions, and none otherwise;

---

*Assigned by Chairman of Judicial Council.

"Now, Therefore, It Is Agreed As Follows:

"1. Water Company agrees to furnish water, for domestic purposes only, to all consumers within the above described real property, as aforesaid, and none other.

"2. Anderson shall, at his own cost and expense, install and construct all water lines within the land to be served, as aforesaid, and shall install a reservoir of acceptable size and specifications to the Water Company.

"3. Anderson shall, at his sole cost and expense, connect with present water system from a Main Transmission Line, running parallel with, and approximately 35 feet South of the Northerly section line of said Section 1. Said Main Transmission Line is to be installed by Fred A. Storey at an agreed price with Anderson and same to be paid for by Anderson. Said pipeline is to be approximately 3965 feet, extending from the Westerly line of Section 1 Easterly to a point approximately 5 feet inside the East ½ of the East ½ of Section 1.

"4. Anderson shall pay for all pipe, fittings, connections, work and material going into the erection and construction of said water system within said land, including connecting his said water system with the water system to be installed as mentioned immediately above.

. . . . . . . . . . . . .

"7. It is specifically agreed by Anderson that when he shall have installed and constructed his water system within the tract or tracts of land described herein, and shall have completed his connections with the water system of Water Company, he shall, for the sum of $1.00, immediately transfer said water system clear and free of encumbrance of every nature, description or kind, to Water Company by proper instrument in writing, and shall provide for Water Company in perpetuity rights of way necessary and sufficient to maintain, repair, construct or reconstruct said water lines, and the whole thereof, within the said land designated as aforesaid. . . ."

The substance of plaintiff's claim was that it had carried out its obligations under the contract and that therefore the defendant was obligated to transfer to it, by sufficient written instrument, title to water distribution works that had been constructed upon the property in Section 1; that the works thus constructed were insufficient and that plaintiff should recover as damages sufficient money to pay the cost of making the works sufficient. It was further claimed that defendant

had in 1956 breached said contract by refusing to accept delivery of water from it and that plaintiff was thereby entitled to damage.

 An examination of the written contract reveals that it fails to describe or identify the "tract or tracts" to which reference is made. When it is noted that the defendant agrees to install a water system and to thereupon transfer title thereto to the plaintiff, it is obvious that the sufficiency of the water system to be thus constructed could not possibly be determined without a determination of the identity of the land intended to be covered.

"A contract to be binding must be definite and certain. (*Goehring* v. *Stockton Morris Plan Co.*, 93 Cal.App.2d 417, 420-421 [209 P.2d 41].) A contract will not be enforced unless it is complete and certain. (*Blake* v. *Mosher*, 11 Cal. App.2d 532, 535-536 [54 P.2d 492].) Where a party seeks specific performance of a contract the terms of the contract must be certain and definite in all particulars essential to its enforcement. A court must be able to say what is the stipulated performance. (*Moore* v. *White*, 98 Cal.App.2d 510, 513 [220 P.2d 918].)" (*Colorado Corp., Ltd.* v. *Smith*, 121 Cal. App.2d 374, 376 [263 P.2d 79].) See 45 Cal.Jur.2d 269, § 15.

It is a well-established rule of law, reflected by Civil Code, section 3538, that "That is certain which can be made certain."

"The general rule seems to be that if the writings comprising the contract in themselves disclose the key or means by which the description may be made certain or identified with its location on the ground, extrinsic evidence may be introduced." (45 Cal.Jur.2d 279, § 21.) It is held that a well-established custom may be relied upon to render sufficiently certain to justify specific performance a contract which is otherwise uncertain in some of its details. (*King* v. *Stanley*, 32 Cal.2d 584 [197 P.2d 321].)

It is apparent therefore that no decree of specific performance of this contract could possibly have been entered without proof of sufficient facts to render the contract sufficiently certain for the purposes of such decree. It was the ruling of the trial court that the contract was ambiguous and therefore evidence of the transaction between the parties was received. The defendant Anderson testified in detail and his evidence finds support in the testimony of other witnesses. In substance he stated the facts to be as follows:

In 1945 he and nine other individuals formed a partnership and acquired lands in Section 3, Section 1 and other property, for the purpose of subdividing and selling lots to the public. They obtained a supply of water on Section 3 and installed a water distribution system and sold lots in that section. In 1946, the water distribution system as it then existed was transferred and, by a subsequent transfer in 1947, became the property of the plaintiff corporation. The plaintiff filed its rules and regulations and tariff schedules with the Railroad Commission. In 1948 an agreement was executed whereby the plaintiff company undertook to furnish water upon land in Section 1 and other property. Thereafter, the copartnership was dissolved and its property holdings were divided among the partners, with the result that Mr. Anderson, the defendant, became the owner of the west half of the east half of Section 1 comprising 166 acres which he subsequently subdivided as ''Tract 3426.''

One of the partners was Mr. Vogel, who obtained 170 acres in Section 1. In the latter part of 1948, Mr. Vogel and the defendant Anderson had a conversation with Mr. Storey on behalf of the plaintiff company relative to a commitment for water supply upon the property owned by them. The purpose of this conversation appears to have been to secure assurance that a water supply would be available in connection with proposed subdivisions. It was testified by defendant that as a part of this transaction Mr. Storey agreed on behalf of the company that for the purpose of supplying water to property in Section 1, the company would install a 4-inch water line across Section 2 to convey water from their water system in Section 3. Although this statement was denied, the court found that such commitment was made.

Thereafter, the plaintiff, through its officers, caused the agreement now in controversy to be drawn and submitted to the defendant for execution. It was accordingly signed by him. The main conflict in the testimony arose with reference to the property discussed or identified as the subject matter of the transaction. Mr. Anderson testified positively and repeatedly that when the negotiations for a commitment were opened he owned only the 166 acres and that he at no time discussed any binding contract such as here involved with reference to any other property. He testified positively that he at all times understood and believed that the contract referred only to Tract 3426 and not to any

other property. Testimony on behalf of the plaintiff was to the effect that the contract contemplated any property that Mr. Anderson might at any time acquire in Section 1. It is the fact that defendant did acquire other tracts in Section 1. The court found that the parties never came to a meeting of the minds as to the territory actually intended to be covered by the contract. The court found that the defendant at all times understood the contract as being one which referred only to the 166 acres of Tract 3426, while plaintiff and its officers at all times understood that the contract referred to any property which Mr. Anderson might acquire.

Succeeding transactions became important for the purpose of determining whether the parties had, by their acts or subsequent agreement, determined the meaning of the contract or had resolved its ambiguities. It appears that Mr. Anderson installed a water system for delivery of water to lots in Tract 3426 and sold lots in that tract to the public. The system thus installed did not at the time include a reservoir. It was however connected to a pipe-line installed by plaintiff and water deliveries were made to occupants of lots. Water deliveries started in June of 1949. The defendant did tender to plaintiff a bill of sale purporting to transfer to plaintiff the water distribution system thus installed, but this offer was rejected upon the ground that the system was insufficient to meet the requirements of the contract, because no reservoir had been erected. Thereafter, defendant acquired other tracts in Section 1, installed water distribution systems to serve them, erected a 10,000-gallon reservoir, and connected such distribution systems to the original system so that plaintiff was supplying water to the occupants of lots in all of such tracts. This appears to have been done without any objection or discussion.

There was, however, considerable discussion as to what defendant should erect by way of storage reservoirs. Such arguments appear to have been inevitable, due to the fact that defendant, as found by the trial court, regarded himself bound under the contract only as to the 166 acres in Tract 3426. There was testimony offered by defendant to the effect that the distribution system which he installed for that tract was sufficient for that purpose and it was so found by the trial court. The trial court further found in accord-ance with the testimony of the defendant that he at all times believed that, under the original agreement of 1948, the com-

pany had undertaken to furnish water to any tract in Section 1 and that he was entitled to receive water under that contract without any obligation to transfer title to a distribution system as in the 1949 agreement. The ultimate result was the commencement of this litigation.

Also, the defendant commenced a proceeding in 1954 before the Public Utilities Commission for the purpose of securing a certificate of public convenience and necessity to supply water in Section 1 and other properties. This was done because in the meantime he had obtained a water supply in Section 36, to the north of Section 1. The appellant also applied for such certificate of authority to supply water to all of Section 1. A lengthy hearing was had which resulted in the issuance of a certificate to the defendant upon condition that certain requirements be met with respect to the erection of reservoirs to insure proper supply of water to landowners in Section 1. Apparently these requirements were met and thereupon defendant's water supply was connected with his reservoir and distribution system and the water service of the plaintiff and appellant was cut off. The court found, upon conflicting testimony, that during all of these subsequent transactions the defendant acted in good faith and that he at all times believed that the contract in question applied to the original 166 acres only. The trial court also found, upon conflicting evidence, that one of the considerations for the contract was the promise of plaintiff that it would install a 4-inch line; that that promise was not fulfilled and that as a result water shortages were occasioned. The materiality of this finding is questioned.

■ Although conceding that there was a conflict in the testimony, the appellant claims that the testimony of the defendant was inherently improbable. It is true that there appears a rather unusual situation, due to the fact that the parties permitted the matter to go for several years without arriving at some definite agreement defining their contractual rights and obligations. There is nothing inherently improbable in this situation, however, and therefore the court may not disregard the findings of the trial court supported by substantial evidence. (*People* v. *Carvalho*, 112 Cal.App.2d 482 [246 P.2d 950].)

■ The court having found that there never was a meeting of the minds as to the terms of the contract, and it appearing that the contract is uncertain and ambiguous

and that that uncertainty was never satisfactorily removed and that the parties did not by any subsequent agreement or conduct define their obligations so as to render the contract certain, it follows that no specific performance could be granted. A number of other rulings are assigned as error but it appearing that the contract was not specifically enforceable, plaintiff could not recover in any event and a determination of the other issues would serve no useful purpose. ■ The plaintiff also sought damages in lieu of specific performance, but it is the rule that in such case when specific performance may not be allowed because there is no enforceable contract, claim for damages in lieu thereof likewise fails. (*Eagle Oil & Refining Co.* v. *James,* 52 Cal. App.2d 669, 678 [126 P.2d 880], 45 Cal.Jur.2d 377, § 85.)

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied February 16, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1960.