[Civ. No. 19111. First Dist., Div. One. Jan. 26, 1961.]

LINA M. DINI, Individually and as Executrix, etc., Respondent, v. ALESSANDRO DINI et al., Appellants.

508

Rudolph J. Scholz for Appellants.

Dodd M. McRae and Harry K. Wolff, Jr., for Respondent.

BRAY, P. J.—Defendants appeal from a judgment for $8,500, the purchase price of a partnership interest which the court found defendants had agreed to buy, and that defendants take nothing under their cross-complaint.

## QUESTIONS PRESENTED

1. Did the agreement of August 28, 1950, obligate Alex to pay $8,500 for Leo's interest?

2. Alleged error in excluding testimony:

(a) Lina's deposition.

(b) Testimony offered to prove allegations of cross-complaint.

## RECORD

Plaintiff Lina Dini was the wife of Leonello Dini who died September 26, 1958. Leonello (Leo) was the brother of defendant Alessandro (Alex) Dini. Lina brought this action both as an individual and as executrix of Leo's estate. In 1946 Alex and Leo formed a partnership which carried on until April 30, 1950, at which time a formal agreement of partnership was entered into between Alex, Leo and Russell Orlandi, Orlandi buying in for $8,500, payable in installments. The articles of copartnership were signed additionally by Leo's wife Lina, Alex's wife Alma, and by Orlandi's mother Flora. A clause in the agreement provided: ". . . upon the death of either copartner, the surviving copartners will, shall and must purchase, and the surviving widow, heirs-at-law or legal representative of the deceased partner will, shall and must sell to the surviving partners, all of the right, title and interest of the deceased partner in and to the partnership business and assets for the sum of $8500.00 . . ." August 28, 1950, Orlandi withdrew from the business by a written agreement signed by all the parties to the last mentioned agreement. This agreement provided that the remaining parties "agree that as of close of business August 26th, 1950, the said Russell J. Orlandi has withdrawn from said copartnership, and *that said Alexander Dini and Leonello Dini shall and will continue said copartnership under the terms and provisions of the partnership agreement dated April 30, 1950, which they hereby adopt as their articles of copartnership.*" (Emphasis added.) Leo and Alex then continued the operation of the business until Leo's death. Thereafter Alex operated the

business. He refused plaintiff's demand that he purchase Leo's interest for $8,500.

Plaintiff sued for $8,500 damages, claiming that the agreement of August 28 required defendants so to do. Defendants answered, claiming that the agreement to purchase only applied to the three-partner agreement and was not carried over in the later agreement. As additional defenses, defendants claimed (a) that, if it were an agreement to purchase, Leo had not complied with the agreement; (b) that the two partners, subsequent to the August 28 agreement, had entered into an oral partnership upon the same terms as the 1946 agreement and which was later confirmed in writing; (c) estoppel; (d) confidential relationship of the two partners and misrepresentation, concealment and pressure by Leo. Then by cross-complaint, defendants alleged that for good consideration Leo had agreed that upon his death Alex was to receive his interest in the partnership.

The court found in favor of plaintiff on her complaint and against defendants on their answer and cross-complaint.

1. *The Agreement of August 28, 1950.*

■■■ There is no reference in this agreement as to what was to be the situation if one of the two partners died unless the clause to the effect that the Dini brothers would continue as partners "under the terms and provisions of the" April 30 agreement "which they hereby adopt as their articles of copartnership" caused the clause in the latter agreement, that upon the death of either copartner, the surviving copartners and their respective wives must purchase and pay $8,500 for the interest of the deceased partner, to require the purchase to be made by the survivor of the two. The trial court took the position that there was no ambiguity in the August 28 agreement and refused to admit evidence by defendants offered to explain the intention of the parties and the meaning of the agreement. Reading the agreements of April 30 and August 28 together, it appears that they are unambiguous.

The agreement of April 30 provided that the two Dini brothers were selling Orlandi a one-third interest for $8,500, payable in monthly installments; that the interest of each partner in the business was one-third, except that Orlandi would not have a third interest until he had paid in $8,500. In the event of his demise his share would only equal the amount he had then paid into the copartnership. "The said sum of $8500.00 is the sum which the surviving partners and their respective wives agree to pay, and the surviving widow

. . . agrees to accept in full of all interest of the deceased copartner in and to the partnership business and assets."

Attorney McRae who drew both agreements testified that in the discussion of the parties concerning the first agreement the brothers evaluated each partnership interest at $8,500 and they considered that to be a fair sum to be paid the surviving widow of a partner if he died. Orlandi, after the execution of the agreement, was dissatisfied and withdrew when he had paid only $773 into the partnership. This amount he was permitted to withdraw when the second agreement was executed. In the discussion with Attorney McRae concerning the drawing of the second agreement nothing was said about what would happen if either of the two remaining partners should die. McRae wanted to draw a completely new agreement but the brothers said that it wasn't necessary as "they would continue along the partnership agreement they had entered into when Orlandi was buying into the business, and they would adopt all the terms." Paragraph 3(a) of the agreement stated that the sale price of the one-third interest being sold to Orlandi was $8,500.

Thus we are squarely faced with the question, are the two agreements when read together so clear that as a matter of law it can be said that the parties intended that the $8,500 to be paid for a third interest under the first agreement was to be paid for a half interest under the second agreement?[1] We agree with the trial court; a study of the two agreements shows no ambiguity. It clearly appears that the brothers valued their respective shares at $8,500. With the taking of Orlandi into the partnership their respective interests which had been one-half became one-third but the value of such interests did not change. Orlandi was to pay $8,500 to get a one-third interest. This he did not do. So when he dropped out the brothers' interests returned to one-half respectively, but each was still considered by them to be of $8,500 value. The obvious intention of the brothers continued to be that upon the death of either partner the widow was to receive $8,500 for his share.

Defendants stress the fact that in the April 30 agreement, which agreement is adopted by the August 28 agreement, the plural word "copartners" is used in designating who shall purchase the interest of a partner who has died, and contend

---

[1]Where the interpretation of an agreement is strictly a question of law and not based upon a conflict in the evidence this court is not bound by the interpretation placed upon the agreement by the trial court. (See 12 Cal.Jur.2d, § 119, p. 324.)

that therefore the purchase clause could not apply when there were only two partners. This contention is not sound. The first agreement obviously dealt with three persons, and if this contention were correct, then practically none of the provisions of that agreement could be considered adopted by the second agreement because the latter did not expressly state that the provisions in the former agreement applying to the three partners now applied to the two partners. By adopting the first agreement as a part of the second such a result necessarily followed. Thus, the August 28 agreement obligated the survivor, Alex, and his wife to purchase Leo's share upon his death.

As the agreement was not ambiguous, the court did not err in refusing to allow extrinsic evidence of its meaning. Actually the evidence which defendants sought to introduce was not to show what the parties meant by what they said, but to show that the parties meant something other than what they said. Evidence is not admissible for this purpose. (See 12 Cal.Jur.2d pp. 336-337.)

The caption of the agreement of August 28 reads: "Agreement for Dissolution of Copartnership and Release of All Claims by Withdrawing Partner." There is no conflict between the caption and the body of the agreement although the caption does not refer to all of the matters included in the agreement.

Defendants contend that plaintiff Lina is not entitled to damages for breach of the contract and that the cause of action therefor will not lie for the reason that there has been no transfer to defendants of Leo's interest in the partnership. However, the evidence shows and the court found that since Leo's death, Alex and Alma have taken over the copartnership business and Leo's interest therein and thereto and continued to operate the business as their own. Thus an award of damages to plaintiff would not leave Lina or the estate with any interest in the partnership and hence the cause of action for damages does lie.

The measure of damages is that provided in section 3302, Civil Code: "Breach of contract to pay liquidated sum. The detriment caused by a breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."

In *Blonder* v. *Gentile*, 149 Cal.App.2d 869 [309 P.2d 147], it was held that the measure of damages for breach of an agreement to form a partnership was the amount which the

defaulting partner had agreed to pay upon execution of the partnership agreement, and that section 3302, Civil Code, applied.

*Yucca Water Co.* v. *Anderson,* 177 Cal.App.2d 253 [2 Cal. Rptr. 162], holding that where there is no enforceable contract, an action for damages for its breach will not lie, is not applicable here for the reason that the contract here is an enforceable one.

2. *Exclusion of Evidence.*

(a) Plaintiff Lina's deposition.

Defendants complain of the rulings of the court in excluding certain evidence (in addition to that offered to interpret the agreement which as we have shown was not erroneously excluded). Plaintiff Lina did not testify, and when defendants requested that she be produced, the request was denied. Defendants then offered her deposition in evidence. The court refused to admit it, on the ground that defendants had not made a proper showing of diligent effort to serve her. Although the court's attention was called to section 2016, subdivision (d)(2), Code of Civil Procedure, it ruled that a party's deposition was not admissible unless one of the conditions set forth in subdivision (d)(3) was shown. This was error. Subdivision (d)(2) provides: ''The deposition of a party to the record . . . may be used by an adverse party for any purpose.'' ''Section 2016 provides that the deposition of a party may be used by an adverse party for any purpose. There is no limitation. Consequently, it may be used to establish any material fact, a prima facie case, or even to prove the whole case.'' (*Murry* v. *Manley,* 170 Cal.App.2d 364, 367 [338 P.2d 976].) The court erred in ruling that the deposition was not admissible on the ground that defendants had not subpoenaed Lina as a witness. We have examined the deposition. It is very doubtful if most of the matter in the deposition is relevant or material. In any event, its exclusion is not prejudicial, as there is nothing said by Lina therein that advances defendants' position in this case.

(b) Testimony offered to prove cross-complaint.

The court refused to admit any evidence under defendants' cross-complaint. This alleged that about February 1957, Leo stated to Alex that because Alex was performing the work which Leo normally should perform and had shared with Leo the drawing accounts and profits of the partnership,

and that Alex was bearing the brunt of the work of the partnership, Leo promised Alex that he would arrange that upon his death Alex would receive Leo's share. In return, Alex promised that he would always pay Leo the same drawing account as he drew and divide equally the profits as long as Leo lived. Alex relied upon Leo's promise, bore the brunt of the partnership work and paid Leo the same drawing account and share of the profits as he received, until Leo's death; that at all times a confidential and fiduciary relationship existed between the parties and Alex had confidence and trust in his brother.

The court ruled that section 1973, subdivision 6, Code of Civil Procedure, requiring an agreement not to be performed during the lifetime of the promisor, or to make provision for any person by will to be in writing, applied.[2] Defendants contend that they had alleged a constructive trust and that section 1973 does not apply to constructive trusts. The basis of a constructive trust action is to enforce an oral contract to bequeath property, in equity, by a quasi-specific performance. It is well established that in such an action the agreement does not have to be in writing, on the grounds either of estoppel or a resulting or constructive trust. (See *Walker* v. *Calloway* (1950), 99 Cal.App.2d 675, 681 [222 P.2d 455]; *Bonnear* v. *Bank of America* (1948), 84 Cal.App. 2d 107, 113 [190 P.2d 307]; *West* v. *Stainback* (1952), 108 Cal.App.2d 806, 814 [240 P.2d 366].) Although the statute of frauds does not apply where there is a constructive trust, the court's ruling was correct for the reason that the cross-complaint does not state a cause of action for a constructive trust. Nor did the offer of proof show any evidence of a constructive trust. In Walker, *supra*, page 681, are set forth the matters which defendants would have to prove in order to enforce the oral contract to bequeath or devise the property in equity by quasi-specific performance. To create a constructive trust the conditions required by section 2224, Civil Code, must appear. "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and

[2]Plaintiff contended that no action would lie on the cross-complaint as defendants had not filed a creditor's claim against Leo's estate under section 716, Probate Code. In an action against an estate to declare a trust no creditor's claim is required to be filed. (*Kroger* v. *Truitt* (1945), 27 Cal.2d 288 [163 P.2d 735].) It is not clear whether the court's exclusion of the evidence was on this ground also. If it was, it was error.

better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'' Here there was no element of fraud, accident, mistake or undue influence. The alleged agreement upon which the claim of constructive trust is based is that Leonello ''would arrange that Alessandro Dini upon his death would receive said Leonello's share of said partnership.'' The only reason alleged was that Alex was to do what he, as a partner, was required to do, namely, pay Leo the same drawing account as he drew and divide the profits equally with Leo. There is no claim that Alex agreed to forbear the right, if one existed, to declare a dissolution of the partnership, or to forbear any other right. The alleged agreement was the typical agreement to bequeath property which is forbidden by the statute of frauds. The alleged agreement is as tenuous as the one in *Fallon* v. *American Trust Co.* (1959), 176 Cal.App.2d 381 [1 Cal.Rptr. 386], which we held was too insubstantial to take it out of the statute of frauds. As pointed out there, an oral agreement to bequeath property '' '*in and of itself*' '' (p. 384) will not support the estoppel necessary to take the agreement out of the statute of frauds. It requires unusual, even extraordinary, circumstances demonstrating that unless the agreement is carried out, unconscionable injury would result to the party asserting the agreement. Neither the allegations nor the offered proof in our case meets this test.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied February 24, 1961.