[Civ. No. 25134.   First Dist., Div. Four.   Feb. 25, 1969.]

Estate of THEODORE SCARBOROUGH PETERSEN, JR., Deceased. PHILIP H. ANGELL, as Trustee, etc., Petitioner, v. PAUL PETERSEN, a Minor, etc., Objector and Appellant; THEODORE SCARBOROUGH PETERSEN III, a Minor, etc., et al., Claimants and Respondents.

Ross & Webber and Gordon W. Hackett for Objector and Appellant.

Field, DeGoff & Rieman and John R. Browne III for Claimants and Respondents.

DEVINE, P. J.—Three days before he died of cancer, Theodore Scarborough Petersen, Jr., executed his will, by which he created a trust which has led to this appeal from an order instructing the trustee. Mr. Petersen had four sons. The eldest, Gary, was provided for in part of the will which is not in issue. He had two sons, Theodore III, age 12, and Scott, age 7, by a marriage which had terminated by divorce about four years prior to the making of the will, and one son, Paul, age 3, by his second spouse.

The testator relates in his will that at the time of the divorce, a property settlement agreement had provided that he would hold a sufficient number of shares of Standard Oil Company of California stock to equal $10,000 when the two

sons, Theodore III and Scott, would become 19 years old. He had agreed to name them beneficiaries of certain life insurance and to hold certain bonds valued at $6,200 for them. He had agreed to pay $175 a month for each of the sons until they would become 21.

When Mr. Petersen died, he held Standard Oil stock valued at $166,425, although he had not earmarked any for himself in his capacity as "custodian." But it appears from the terms of his will that the testator believed and directed that his promise should be fulfilled. He gave one-half of his estate to a trustee for his wife, the other half to a trustee with directions to divide into three trusts, named for and for the benefit of each of the three sons. The corpus of the trust for the youngest son, Paul, is remarkably like the sum of the assets which the testator had obligated himself to provide to the other sons. The trustees were directed to set aside for Paul the sum of $10,000 and securities equal to $3,100. Paul was bequeathed a sum equal to one-half of the proceeds of the life insurance policies of which Theodore III and Scott were beneficiaries, which would make his share of the policies equal to theirs.

Claims against the estate for $13,100 were filed on behalf of each of the elder children. These were allowed by the executor in the amount of $3,100, but rejected as to the additional amount of $10,000. No action was filed. The executor, father of the testator, was named in the will as trustee, but an alternate trustee, Philip H. Angell, acted as trustee and requested instructions from the court. He proposed to the court that he, as trustee, would apportion to the Paul Petersen trust $3,100 plus one-half of the proceeds of the life insurance policies, but would not place the $10,000 in that trust because no Standard Oil stock had been set aside by the father for the other two sons and, of course, the possibility of his acting as "custodian" had ended. The court directed the trustee so to act.

The court, having found that neither mother had sufficient funds to support her son or sons, also directed the trustee to pay $175 per month to the respective guardians of each of the three sons, and to invade principal, which was necessary because income was insufficient to meet these amounts.

■ Paul Petersen, by his guardian, appeals from this order, contending: 1) that $10,000 should be deposited in the Paul Petersen trust; and 2) that under the terms of the will, he, Paul, should receive $175 per month from income or, if necessary, principal of all three trusts, and the other two sons

should receive only net income from their trusts after he, Paul, had been paid.

## The $10,000 Trust

Appellant concedes that the testator intended to treat the three sons equally. But he argues that the *will* was designed to provide equality for Paul only and to bring his position to a par with what was done for the others by the *property settlement agreement*. How the other sons were to make that agreement effective, argues appellant, is not a matter for the probate court to be concerned with. If the other sons did not file suit on their rejected claims, argues appellant, this is no reason for granting relief by equalizing their trust estates with that of Paul.

We do not agree with this. We sustain the order. It accomplishes equality. Equality would result either from placing $10,000 (or its equivalent in stock) in each of the three trusts, or from the elimination of it from all three, although in a rather technical way the solutions would vary. The over-all estate for the three sons would not be increased or diminished either way; it remains constant at one-half.

The father's intent concededly having been that of providing equal benefits for the three sons, there is for consideration simply the question whether that intent, as found from the will itself, was to accomplish equality by the operation of the will or to place the two older sons in such position that they must, in order to make their father's agreement effective, take legal action against his executor or his trustee. The will shows to us, as it did to the probate judge, that the father's intent was to achieve the equality of benefits by operation of the will itself.

1. Although the testator had not set aside specific shares of Standard Oil stock, holding them as custodian for the older sons (and perhaps was not yet obliged to do so, for they were not yet 19), he did hold stock of that company valued far in excess of the number of shares which in all likelihood would be required to equal in value $10,000 for each son when that son would arrive at age 19. Thus, the testator knew that the specific resources needed to carry out the property settlement agreement were at hand.

2. An exceedingly strong declaration of the testator's intent to provide equally for the three sons appears in the will. It reads: "From the income of the THEODORE SCARBOROUGH PETERSEN, III, TRUST, the SCOTT SAYER PETERSEN TRUST and

the PAUL PETERSEN TRUST, or if said income is not sufficient then from the principal thereof, trustee shall first pay to my son, PAUL PETERSEN, a sum equal to the amount paid to each of THEODORE SCARBOROUGH PETERSEN, III, and SCOTT SAYER PETERSEN under the terms of said property settlement as provided in paragraph EIGHTH thereof, it being my intention that there shall first be deducted equally from the income or principal of the THEODORE SCARBOROUGH PETERSEN, III, TRUST, the SCOTT SAYER PETERSEN TRUST and the PAUL PETERSEN TRUST herein created, an amount to be paid to PAUL PETERSEN so as to equalize and give to my son PAUL PETERSEN the same payments and support and care and education as given to my sons, THEODORE SCARBOROUGH PETERSEN, III, and SCOTT SAYER PETERSEN . . . . The purpose of this provision is to provide, insofar as possible, an income to my son, PAUL PETERSEN, equal to that of my sons, THEODORE SCARBOROUGH PETERSEN, III, and SCOTT SAYER PETERSEN, so that each of my children will be receiving substantially an equal share of *my estate* and the income therefrom.'' (Italics added.)

Since the testator expressed his intention that the three sons should receive an equal share of his *estate,* as well as of payments in support, it appears plainly that he intended that those who were charged with the administration of the will and of the trusts created under it should effectuate equality of treatment of the sons under the authority given by the will.

3. Other provisions of the will show that the testator desired that the three sons be treated equally and that he did not regard the agreement he had made as an obligation which had been thrust upon him, enforcement of which he would wish left to whatever legal resources the older sons or their representatives could find. The will provides that upon the death or remarriage of the wife, the corpus of the trust for her benefit shall augment the trust for the three children (and for certain grandchildren), not for her son, Paul, only. Also, upon the death of any of the three sons before distribution to him, in the absence of issue, the share shall be carried to the benefit of the other son or sons. The one-half of the estate designated as the trust for the children (and grandchildren), above the particularly designated items, was directed to be held in trust for the three sons. A fatherly regard for the three appears throughout the will.

4. Of course, the will could have been more explicit. But the explanation offered by the trustee, Mr. Angell, is a logical one. Had the will explicitly created trusts for the benefit of

the two older sons, in amount $10,000 each (instead of making reference to the property settlement agreement and then expressing the testator's desire for equal treatment for the three sons), there was some danger that the will would be construed as having created an additional benefit for the older sons; that is, that each of them was to be beneficiary of the trust and also of the agreement. This would have been unfair to Paul.

5. It is argued by appellant that respondents should have commenced an action on the rejected claims. We have noted above that it does not seem consonant with the testator's intent, as expressed in the whole will and in particular in the part quoted above, to have placed the sons in this position of hostility to the representatives of his estate; but, besides, it would seem that the rights under the property settlement agreement probably could not be enforced by action on the claims. The obligation of the father under that agreement was to hold particular stock until the boys would reach 19, many years removed. This, it seems to us, would be more likely the subject of a suit in equity to impress a trust had action outside the probate court been necessary. (*Kroger* v. *Truitt*, 27 Cal.2d 288, 294 [163 P.2d 735]; *Porter* v. *Van Denburgh*, 15 Cal.2d 173 [99 P.2d 265]; *Newport* v. *Hatton*, 195 Cal. 132, 150 [231 P. 987].) A separate suit in equity, with its expense, its delay and the probably more antagonistic attitude of parties, should not be required to accomplish the testator's fundamental intention, which the probate court could do inexpensively and expeditiously. The probate court's power thus to act is very broad. (Prob. Code, § 1120.)

6. It is suggested by appellant that the testator perhaps had satisfied his obligation to the older sons in some manner which we do not know of. But since his obligation under the agreement was to hold specific shares until a certain time, he could not have met this obligation for his death intervened. Even if he had conferred some substitute benefit on these sons, we should expect that this would have been known, or that discovery proceedings would have been employed, and the fact could have been brought to the court's attention at the time of the petition of the trustee for instructions. Besides, if this had been the fact, surely the testator would have said so instead of referring to his obligation in such terms as unmistakably show it to have been as yet unfulfilled.

7. ▪ Appellant asserts that the action of the court in eliminating the $10,000 fund for Paul is in violation of sec-

tion 104 of the Probate Code, which provides that: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will." But this section is subordinate to the principle contained in section 101 of the Probate Code, which provides, in its relevant part, that: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."

The principle that the testator's intent as expressed in the will is the overriding one, to which all others must yield, is so firmly established that few sustaining authorities need be cited. (*Estate of McKenzie,* 246 Cal.App.2d 740, 746 [54 Cal.Rptr. 888] ; *Estate of Thompson,* 50 Cal.2d 613, 617 [328 P.2d 1].) A cognate principle is that the language used must be liberally construed with a view to carrying into effect what the will as a whole shows was the real intent of the testator. (*Estate of Hoytema,* 180 Cal. 430 [181 P. 645] ; *Estate of Bixby,* 55 Cal.2d 819, 824 [13 Cal.Rptr. 411, 362 P.2d 43] ; *Estate of Thompson,* 18 Cal.App.2d 680, 683 [64 P.2d 984] ; *Estate of Gansner,* 222 Cal.App.2d 390, 393 [35 Cal.Rptr. 213] ; Prob. Code, § 103.)

Reasoning from these canons of construction, the courts have encountered no barrier to finding testamentary gifts by implication. (*Brock* v. *Hall,* 33 Cal.2d 885, 889, 891-892 [206 P.2d 360, 11 A.L.R.2d 672] ; *Estate of Campbell,* 250 Cal.App.2d 576, 582 [58 Cal.Rptr. 723] ; *Estate of Hubbard,* 122 Cal.App.2d 942, 946-947 [266 P.2d 196].) If gifts by implication can be upheld, an equalizing by refraining from setting aside for one person an amount which would frustrate the testator's intent as to all his beneficiaries as it appears from the will itself, presents no insuperable difficulty to the courts.

Within the meaning of section 104, therefore, the "clear and distinct" devise should be considered that which ran to the trustee; the subordinate direction to set aside the $10,000 must be regarded as subject to the court's power and duty to carry out the testator's intent as expressed in the whole will.

It will be seen from all of the above that we are not, nor was the court below, desirous of making a new will for the testator, or of doing what the judges think he ought to have

done, but rather of carrying out the testator's intention as the courts have found it to be from the testament itself.

Appellant cites *Estate of Bourn,* 25 Cal.App.2d 590 [78 P.2d 193], as similar to ours: A testatrix had intended to provide equal annuities for her three sisters-in-law by bequests which, when added to annuities being made by her husband's will, would make a total specified amount. Unknown to her, her husband changed his will, enlarging the provision for one of his sisters, and destroying the equality intended by his wife. The court nevertheless did not depart from the literal terms of the wife's will. But in the *Bourn* case, the controlling factor was that the same attorney had drawn the will of both spouses, and he presumably knew the difference between an annuity and a gift of income, and the husband's will had created the inequality not by enlarging an annuity, but by substituting a gift of income.

### Disbursement of Income

In the matter of payment of income, we reach the same conclusion as we did in the matter of principal, with this added observation: The provision for Paul is for payment of income equal to the amount *paid* to each of the others under the terms of the property settlement agreement. Therefore, if the others were not *paid,* by reason of failure to file claims against the estate, nothing would be payable for the support, care and education of Paul. Obviously, this result would be a complete defeat of the intention of the testator. His will shows that he intended that all three sons should be supported, and the court's order does this exactly.

The order is affirmed.

Rattigan, J., and Christian, J., concurred.