[L. A. Nos. 17067, 17481. In Bank. Nov. 24, 1941.]

M. C. DUTTON, Respondent, v. INTERSTATE INVESTMENT CORPORATION (a Corporation), Appellant. (Two Cases.)

Denio, Hart, Taubman & Simpson, Sherman & Sherman and W. B. Thomas for Appellant.

· Fogel & Beman and Chalmers L. McGaughey for Respondent.

THE COURT.—This cause was taken over after decision by the District Court of Appeal of the Fourth Appellate District. Upon further examination of the record, we adopt the opinion of Mr. Justice Marks, with such omissions and additions as hereinafter appear, as and for the decision of this court. It reads:

"There are two appeals in this case which have been consolidated. The first appeal is from an interlocutory decree

in which it was determined that plaintiff had an interest in the profits from an oil venture and an accounting was ordered. The second is from the final judgment after the accounting.

"M. C. Dutton describes himself as a practical geologist. He testified that during and prior to 1935 he had spent much time in investigating the possibility that property belonging to the city of Los Angeles near Wilmington might be oil bearing; that after this investigation he formed the opinion that it was oil bearing. Zack N. Neel was an oil scout who had known Dutton for several years and had performed services for the Interstate Investment Corporation and Emmet H. Jones, its president.

"Dutton went to Neel and discussed the probability of the city property being oil bearing and of leasing it for oil development. Under its fixed policy, the city would not lease any of its property for oil development to a lessee who did not have a credit of at least $100,000. Neither Dutton nor Neel had any such credit.

"Neel took the matter to Jones who became interested in it. Jones saw Neel and Dutton on several occasions. Neel testified that in the course of these discussions, and in the presence of Dutton, he told Jones that they would take him (Jones) in on the 'deal' and the three would divide any profits from the transaction equally. Jones consented to this arrangement. It was decided that the application for the lease would be made by the Interstate Investment Corporation because the three believed that it had the necessary financial responsibility to satisfy the requirements of the city; that Neel and Dutton would attempt to secure the lease and attend to all of the negotiations. Jones agreed to have the contract for the division of the profits reduced to writing. No question is raised as to the authority of Jones to represent and bind the Interstate Investment Corporation in the transaction.

"Dutton and Neel asked Jones for the written contract on several occasions but Jones delayed producing it from time to time. He finally told them it would be signed after the lease was executed, and on one occasion gave as a reason for the delay that he did not want either Dutton or Neel to sell any interest in the lease and thus cloud the title of the lessee.

"The negotiations for the lease were conducted chiefly by Neel. They resulted in a permit being given to the Interstate Investment Corporation to drill for, produce, store and take from the described property oil, gas, asphaltum and other hydrocarbons, and for purposes incidental thereto. The permit does not differ in legal effect from the ordinary form of an oil lease. It was dated November 13, 1935, and provided 'that the term of this permit shall be for a period of five (5) years from and after the date this permit becomes effective, and as long thereafter as oil or other hydrocarbons are produced in commercial quantities, it being understood and agreed that the said permit shall automatically terminate at the end of the period twenty (20) years from the effective date hereof unless sooner terminated by agreement of the parties, breach of the conditions of this permit, or as otherwise provided herein.'

"A few days after November 13, 1935, Jones told Neel and Dutton that he would take care of Neel but did not regard Dutton in on the 'deal' and would pay him nothing.

"The foregoing summary is taken largely from the testimony of Neel and was corroborated by Dutton in many respects although there are some discrepancies in the testimony of the two men. Jones flatly contradicted this evidence in its important particulars. As the trial court found in accordance with the evidence we have outlined we do not deem it necessary to burden this opinion with conflicting evidence given by Jones. Conflicts in the evidence are addressed to the trial judge and are settled by him. On appeal we must disregard conflicts and accept as true the evidence supporting the findings and judgment.

"About March 31, 1936, the Interstate Investment Corporation assigned the permit to the General Petroleum Corporation of California for a cash consideration of $20,000 and a percentage of the hydrocarbons to be produced from the property.

"The Interstate Investment Corporation made a settlement with Neel for his services in securing the permit but has refused to make any settlement with Dutton or to recognize that he has any compensation coming to him or any interest in the profits from the transaction.

"In the hearing on the accounting it appeared that the Interstate Investment Corporation did not have sufficient

credit to enable it to satisfy the requirements of the city of Los Angeles. It was found that it 'did secure Frank G. Butler and George P. Taubman, Jr., to make the necessary financial qualifications,' and was required to convey to them a sixty per cent interest in the permit; that it paid them sixty per cent, or $12,000, of the $20,000 paid by the General Petroleum Corporation; that it had expended an additional $13,814.72 in connection with the permit and the leased property, leaving a deficit of $5,814.72 which it would be entitled to receive out of future profits from the leased property. It was further found that it would be required to pay Butler and Taubman sixty per cent of future profits, leaving a balance of forty per cent out of which it would be entitled to reimburse itself the $5,814.72, together with 'a reasonable charge for office overhead and expenses incurred in connection with' the permit. It was ordered that from the balance remaining from the forty per cent of the profits to be received from the General Petroleum Corporation one-third be promptly paid to plaintiff.

"Appellant urges that the contract with plaintiff is void because it was not in writing and therefore violates various provisions of the statute of frauds.

"It is first urged that under the contract, Dutton claimed 'to have, own and receive a one-third interest . . . in a lease of real property, which lease and the one-third interest therein was to extend and continue for a longer period than one year . . . ' and was invalid because it was not in writing. (Code Civ. Proc., sec. 1973; *Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871]; *Dabney* v. *Edwards*, 5 Cal. (2d) 1 [53 Pac. (2d) 962, 103 A. L. R. 822].)"

It is clear under recent decisions that an agreement assigning a fractional interest in the oil and hydrocarbons produced under an oil and gas lease operates to transfer an interest in real property. (*La Laguna Ranch Co.* v. *Dodge*, 18 Cal. (2d) 132 [114 Pac. (2d) 351]; *Callahan* v. *Martin*, *supra*, p. 124.) Such a transfer of an interest in real property is required by our statutes to be in writing. (Civil Code, sec. 1624 (4); Code of Civil Procedure, sec. 1973 (4); *Denio* v. *Brennecke*, 6 Cal. App. (2d) 678 [45 Pac. (2d) 229].) Under the facts of the present case, however, as disclosed by the pleadings and by the findings of the trial court, the agreement did not contemplate that plaintiff was

to receive a one-third interest in the oil and gas produced under the lease. The agreement was that he was to receive one-third of the net profits ultimately realized by the Interstate Investment Corporation, and that is the effect of the judgment rendered by the trial court. Such an agreement to share the profits from a transaction involving real estate is not required to be in writing. (*Arnold* v. *Humphrey,* 138 Cal. App. 637 [33 Pac. (2d) 67]; see *Koyer* v. *Willmon,* 150 Cal. 785 [90 Pac. 135]; *Sly* v. *Abbott,* 89 Cal. App. 209, 216 [264 Pac. 507]; Restatement, Contracts, sec. 193.)

█ Appellant next urges that the failure to have the agreement in writing violated the statutory requirement that agreements which are not to be performed within a year must be in writing. (Civ. Code, sec. 1624 (1); Code Civ. Proc., sec. 1973 (1).) Assuming that the agreement in the present case falls within this provision of the statute of frauds, the finding of the trial court that Dutton had fully performed all of his obligations under the contract operates to remove the bar of the statute. (*Dougherty* v. *California Kettleman Oil Royalties, Inc.,* 9 Cal. (2d) 58, 81 [69 Pac. (2d) 155]; *Hellings* v. *Wright,* 29 Cal. App. 649, 656 [156 Pac. 365]; Restatement, Contracts, sec. 198; 2 Williston, Contracts (Rev. ed. 1936), sec. 504, p. 1471.)

"The case of *Dougherty* v. *California Kettleman Oil Royalties, Inc., supra,* is so factually similar to the instant case that it must be considered as controlling. It was there said:

" 'The fact that the agreement between Dougherty and Ochsner rested in parol is of no legal significance in this case. This agreement was fully executed by Dougherty. Assuming the contract could not be performed within a year and therefore fell within the statute of frauds, the circumstances of this case, showing as they do complete performance by Dougherty, clearly create an estoppel to plead the statute. Dougherty's performance was clearly induced by Ochsner's representations that he would sign the contract. This creates an estoppel. (*Seymour* v. *Oelrichs,* 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154].) Another complete answer to this point is that under the facts of this case the moment the permit was issued a trust resulted in favor of Dougherty. As to that trust neither Ochsner nor his assignees with notice may

successfully plead the statute. (*Byers* v. *Doheny,* 105 Cal. App. 484 [287 Pac. 988] ; *Hidden* v. *Jordan,* 21 Cal. 92, 93.) '

"Appellant argues that the contract was abandoned by the parties before it was consummated. This contention is based on the testimony of Jones to the effect that several days before November 13, 1935, he told Dutton that he did not consider him in on the 'deal' and would pay him nothing and that Dutton and Neel walked out of the office. Neel testified that this conversation occurred after the city officials had signed the permit. The trial court found in accordance with this evidence which effectively disposes of this contention.

"Appellant makes attacks on the evidentiary support of several findings. These arguments might properly be made to the trier of fact but cannot prevail on appeal as they are directed to the credibility of the witnesses and the weight to be given their testimony.

"Particular attack is made on the finding to the effect that Dutton had devoted considerable time and much energy in satisfying himself that there was an excellent prospect of obtaining oil from the leased property. It is argued that Dutton was not a scientific geologist; that his investigations were made with an instrument of unknown and unestablished value which appellant denominates a 'Doodlebug'; that the results of his work were a few lines and a few marks on a printed map prepared by others and were of no value.

"This argument lacks merit here. The methods which Dutton used to satisfy himself that the land was a valuable oil prospect are unimportant. He convinced himself of that fact and convinced Neel of it. Neel convinced Jones, and Jones so satisfied the General Petroleum Corporation of it that this company paid $20,000 for an assignment of the permit, agreed to drill wells on the property and to pay appellant thirty per cent of the net receipts from the leased property after the payment of all development costs. No matter how unscientific the methods of Dutton may have been, they set in motion a chain of circumstances that resulted in a contract of apparent value to appellant.''

The judgments are affirmed.