Filed 3/25/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| GEORGE ZAKK, | B284432 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC619933) |
| v. | |
| VIN DIESEL et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court for Los Angeles County, John P. Doyle, Judge.  Affirmed in part and reversed in part.

Hamrick & Evans, Martin J. Barab, Jonathan D. Dutton and A. Raymond Hamrick, III, for Plaintiff and Appellant.

Freedman + Taitelman, Sean M. Hardy and Bryan J. Freedman for Defendants and Respondents Vin Diesel and One Race Films, Inc.

Manatt, Phelps & Phillips, John M. Gatti, Katrina Dela Cruz and Benjamin G. Shatz for Defendant and Respondent Revolution Studios.

This case involves a dispute over whether plaintiff and appellant George Zakk is entitled to be paid and receive an executive producer credit for a film that is a sequel to a film he had worked on and developed. Zakk sued defendants Vin Diesel, One Race Films, Inc., and Revolution Studios[1] for breach of an oral contract, breach of an implied-in-fact contract, intentional interference with contractual relations, quantum meruit, promissory estoppel, and declaratory relief. His case was dismissed after the trial court sustained defendants' demurrers to Zakk's third amended complaint. The primary bases for the trial court's ruling were its findings that the third amended complaint was a sham pleading and that the breach of oral contract claim (and its derivative claims) were barred by the statute of frauds. In addition, the court found that Zakk's quantum meruit claim was barred by the statute of limitations, and it dismissed his claim for promissory estoppel because it was added without leave of court.

With regard to oral contracts that fall within the statute of frauds category of contracts not to be performed within a year, we hold that the promisee's full performance of all of his or her obligations under the contract takes the contract out of the statute of frauds, and no further showing of estoppel is required. We distinguish cases involving other categories of contracts within the statute of frauds, such as contracts to make a will or contracts not to be performed within the promisor's lifetime, because those categories of contracts historically have been

_____

[1]    We will refer to Vin Diesel and One Race Films, Inc. collectively as Diesel/One Race, and to all defendants collectively as defendants.

2

treated differently than contracts not to be performed within a year. Therefore, we conclude that to the extent those cases hold that avoidance of the statute of frauds requires the promisee to satisfy the elements of estoppel--showing extraordinary services by the promisee or unjust enrichment by the promisor--they do not apply to the category of contracts not to be performed within a year.

Here, Zakk's allegation that he fully performed his obligations under the alleged oral contract at issue is enough to avoid the statute of frauds. Therefore, in finding that Zakk's breach of contract and related claims were barred by the statute of frauds absent alleged facts showing defendants were estopped to assert the statute, the trial court erred. We also conclude the trial court erred in finding the third amended complaint was a sham pleading, and that the statute of limitations barred his quantum meruit claim. However, we conclude the trial court did not abuse its discretion in dismissing the promissory estoppel claim. Accordingly, we affirm the judgment to the extent it dismisses Zakk's promissory estoppel claim and reverse the judgment as to his remaining claims.

## BACKGROUND

Because this appeal raises the question whether the third amended complaint was a sham pleading, we must discuss each version of the complaint, the demurrers, and the rulings on the demurrers in some detail to give some context to our analysis of that issue. In accordance with the standard of review, we treat the facts alleged in the

3

complaints as true for the purposes of this appeal.  (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098.)

A.    *Original Complaint*

    1.    *Allegations*

Zakk filed the original complaint in this case on May 10, 2016.  It asserted four causes of action--breach of contract, breach of implied-in-fact contract, declaratory relief, and intentional interference with contractual relations--based upon his assertion that he was entitled to receive an executive producer credit and a $275,000 executive producing fee for the sequel to a film entitled *xXx*.  The complaint alleged as follows.

Vin Diesel is an actor, producer, and director.  Diesel founded One Race, a production company, in or about 1995; it was incorporated in March 2001.  Zakk ran One Race from its inception, and was responsible for developing projects and managing them to conclusion.  Zakk did not receive a salary, reimbursement for expenses, or any other compensation for his daily work.  Instead, he "had an oral and/or implied-in-fact agreement with DIESEL and ONE RACE FILMS which provided that for each motion picture in which (a) DIESEL would star in and act in the capacity as producer in and (b) ZAKK helped develop and/or worked on while running the operations of ONE RACE FILMS, including sequels based thereon, ZAKK would, unless otherwise agreed, receive the following:  [¶]  (a)  A fee that ranged from $250,000 to $275,000; and  [¶]  (b)  An Executive Producer or Producer credit on screen and in promotional materials on a Most Favored Nation (MFN)

4

basis with other Executive Producers or Producers (depending on whether ZAKK received an Executive Producer or Producer credit on the motion picture)."

The complaint alleged "there is a considerable amount of precedent which evidences ZAKK's oral and/or implied-in-fact agreement with DIESEL and ONE RACE FILMS," and listed six original films and one sequel for which he was paid and given executive producer or co-producer credit. The first film, *Strays*, was produced in 1997; the last original film listed, *Find Me Guilty*, was produced in 2006. The one sequel listed, *Riddick* (which was a sequel to the 2004 original film, *The Chronicles of Riddick*) was produced in 2013; Zakk received an executive producer fee and credit for the sequel even though his relationship with Diesel and One Race had terminated in 2007.

With regard to the film *xXx*, which was produced in 2002, the complaint alleged: "ZAK worked on and helped develop *xXx*. Accordingly, with respect to *xXx* and any sequel of *xXx* which would be starring and produced by DIESEL, Defendants DIESEL, ONE RACE FILMS, and/or REVOLUTION STUDIOS (the production company) agreed to provide ZAKK with an Executive Producer credit and $275,000 executive producing fee in exchange for his services." The complaint further alleged that defendants were currently in production of a sequel to *xXx*, entitled *xXx: The Return of Xander Cage*, starring Diesel, which was directly based upon the original film and was set to be released on January 20, 2017.

In the first cause of action for breach of oral contract, the complaint alleged that "[i]n exchange for ZAKK's work on the original *xXx*, ZAKK, on the one hand, and DIESEL, ONE RACE FILMS, and/or REVOLUTION STUDIOS, on the other entered into an oral agreement which provided that ZAKK would receive the following as respects the *xXx Sequel*: [¶] (a) An Executive Producer fee of $275,000; and [¶] (b) An Executive Producer credit on screen and in promotional materials on a Most Favored Nation basis with other Executive Producers (e.g., same size print and card)." It alleged that Zakk had "performed all material conditions, covenants, obligations and promises required on [his] part to be performed in accordance with the oral agreement except for those conditions, covenants, obligations and promises that have been waived, excused, rendered impossible and/or prevented by Defendants," and that Diesel, One Race, and/or Revolution breached the agreement by refusing to pay Zakk his fee or provide him with an executive producer credit.

The second cause of action, for breach of implied-in-fact contract (which was alleged only against Diesel and One Race), alleged that by reason of the practices and conduct as described in the complaint there existed an implied-in-fact agreement between Zakk and Diesel/One Race pursuant to which Zakk was entitled to an executive producer fee of $275,000 and an executive producer credit for the *xXx* sequel. This cause of action included the same performance and breach allegations as alleged in the breach of oral contract cause of action.

The third cause of action, for declaratory relief, alleged there was an actual dispute between Zakk and defendants concerning their rights

6

and duties with respect to the *xXx* sequel.  It sought a declaration that Zakk is entitled to an executive producer fee of $275,000 and executive producer credit for the *xXx* sequel.

The fourth cause of action, for intentional interference with contractual relations (only against Revolution), alleged that, to the extent Revolution is not found to have entered into the oral contract with respect to the *xXx* sequel, it knew of the oral and/or implied-in-fact contract between Zakk and Diesel/One Race.  The complaint alleged that Revolution's conduct prevented, or made more expensive or difficult, Diesel/One Race's performance of the contract, that Revolution intended to disrupt the performance of the contract or knew that disruption was certain or substantially certain to occur, and that Revolution's conduct was a substantial factor in causing Zakk damage.

2. *Demurrer*

Diesel/One Race filed a demurrer to the complaint.  They argued that all causes of action were barred by the two-year statute of limitations found in Code of Civil Procedure section 339(1), and that the complaint failed to allege facts sufficient to state any cause of action.

With regard to the statute of limitations, Diesel/One Race noted that in all of his causes of action, Zakk was seeking to recover compensation for his personal services.  They observed that Zakk's services related to the original *xXx* film "were completely performed by 2002" and that he alleged that he stopped providing services to One Race in 2007.  Thus, they argued that because the statute of limitations for oral or implied-in-fact contracts for personal services begins to run

7

when those services end, Zakk's claims expired in 2004 (if based upon the completion of services related to the original *xXx* film) or 2009 (if based upon the completion of all services to One Race).

Diesel/One Race also argued that Zakk failed to alleged facts sufficient to state a breach of oral contract claim because (1) the alleged contract was fatally uncertain and (2) the alleged contract was barred by the statute of frauds. With regard to the first ground, Diesel/One Race asserted that the alleged contract was uncertain because "[i]t is uncertain who the parties are. It is uncertain what the respective obligations of the parties are. It is even uncertain whether [Zakk] has alleged one contract or several and under which contract(s) his claims arise." With regard to the statute of frauds, Diesel/One Race argued that the alleged oral agreement by its terms was not to be performed within a year from its making and therefore was barred under Civil Code section 1624, subdivision (a)(1).

Finally, Diesel/One Race contended that (1) Zakk's breach of implied-in-fact contract cause of action failed to state a claim because an action based on an implied-in-fact contract cannot lie where there exists an express contract covering the same subject, and Zakk alleged both a valid express contract and an implied-in-fact contract; and (2) Zakk's cause of action for declaratory relief failed because it did not allege an justiciable controversy, but instead alleged an accrued cause of action for an actual breach.

### 3.    *Ruling*

The trial court sustained in part the demurrer, and granted leave to amend.

The court rejected Diesel/One Race's statute of limitations argument.  It observed that the statute begins to run on a breach of contract cause of action when the contract is repudiated, and the complaint did not allege when that repudiation took place.

The court agreed in part with Diesel/One Race's uncertainty argument.  It found the complaint was unclear about whether the alleged agreement provided that Zakk was to be paid and credited for sequels even if he did not develop or work on the sequel.  It noted if that were the case, Diesel/One Race's assertion of the statute of frauds would be proper.  Therefore, it sustained the demurrer to the breach of oral contract cause of action on the ground of uncertainty.

The court also agreed with Diesel/One Race's argument that Zakk could not assert breach of both an implied-in-fact contract and an express contract covering the same subject matter, and sustained the demurrer to the breach of implied-in-fact contract claim on that ground.  In doing so, however, it acknowledged that Zakk could assert both claims in the alternative.

Finally, the court sustained the demurrer to Zakk's declaratory relief claim because it only concerned an accrued claim and did not seek prospective relief by way of a declaration of rights.

9

B.    *First Amended Complaint*

    1.    *Allegations*

Zakk filed a first amended complaint with the following changes and additions.

First, where Zakk had alleged an "oral and/or implied-in-fact agreement" in the original complaint, the first amended complaint alleged an "oral or implied-in-fact agreement."  The first amended complaint also did not incorporate by reference in his breach of implied-in-fact cause of action the allegations of his breach of oral contract cause of action (those allegation had been incorporated in the original complaint).

Second, Zakk added allegations regarding the alleged contract in an attempt to clear up any uncertainty.  He alleged that under the contract he "was to be paid and credited for all sequels to motion pictures that (a) DIESEL would star in and (b) ZAKK helped develop and/or worked on the original picture upon which the sequel is based, regardless of whether ZAKK helped develop or work on such sequels."

Zakk also alleged that "[b]y virtue of the services that ZAKK provided in connection with *xXx* (i.e., working on the picture and helping to develop it), ZAKK fully performed all of his obligations under the oral or implied-in-fact agreement that ZAKK had with DIESEL and ONE RACE FILMS, thereby entitling ZAKK to an Executive Producer credit and $275,000 executive producing fee with respect to any sequel of *xXx* which DIESEL would star in, regardless of whether ZAKK helped develop or work on such sequels."  In addition, Zakk specifically alleged an oral contract with Revolution with regard to *xXx* and any

10

sequel starring Diesel, and that he fully performed all of his obligations under that oral agreement.[2]

Zakk also included some additional language to his allegation regarding the payment and producing credit he received for the sequel to *The Chronicles of Riddick*. Thus, he alleged: "For example, in 2013, <u>in exchange for the services that ZAKK provided (work and development) in connection with *The Chronicles of Riddick* (released in 2004)</u>, ZAKK received an Executive Producer fee and credit for the sequel to *The Chronicles of Riddick*--i.e., the motion picture entitled, *Riddick* (released in 2013)." (Additional language underlined.)

In addition, Zakk made a slight addition to his allegation of performance in his breach of oral contract and breach of implied-in-fact contract causes of action, presumably to address the trial court's comments regarding the statute of frauds. He added the word "fully" to both allegations, so the allegations stated that he "has fully performed" all his obligations except for those "that have been waived, excused, rendered impossible and/or prevented by Defendants."

Finally, Zakk amended his declaratory relief cause of action to allege that a controversy had arisen concerning the rights and duties

---

[2]  Those allegations stated: "17.  In exchange for the services that ZAKK provided in connection with *xXx* as alleged herein, REVOLUTION STUDIOS (the production company for *xXx*) also orally agreed to provide ZAKK with an Executive Producer credit and $275,000 executive producing fee with respect to any sequel of *xXx* which DIESEL would star in, regardless of whether ZAKK helped develop or work on such sequels. [¶]  18.  By virtue of the services that ZAKK provided in connection with *xXx* as alleged herein, ZAKK fully performed all of his obligations under his oral agreement with REVOLUTION STUDIOS."

with respect to "sequels to motion pictures that (a) DIESEL will star in and (b) ZAKK helped develop and/or worked on the original picture upon which the sequel is based." He alleged that he contends and seeks a declaration that for each such sequel he is entitled to a fee equal to the fee he received in connection with the film upon which the sequel is based, as well as an executive producer or producer credit (depending upon whether he received an executive producer or producer credit on the original film).[3]

2. *Demurrers*

Diesel/One Race and Revolution each filed a demurrer to the first amended complaint.

In their demurrer, Diesel/One Race asserted that the statute of frauds barred Zakk's breach of oral contract claim because it could not be performed within one year and Zakk did not plead any facts to support an exception to the statute or estoppel to assert the statute. They also argued that that claim failed on the merits because there was no breach, since the *xXx* sequel had not yet been completed and released. They contended that the cause of action for breach of implied-in-fact contract failed for the same reasons the breach of oral contract failed, and because no such claim can lie where there is a valid express contract. Finally, they argued the declaratory relief claim failed

---

[3] We note that Zakk did not make any change to the prayer for relief as to the declaratory relief cause of action, so that the prayer still sought a declaration only as to the *xXx* sequel.

12

because (a) it sought declaratory relief that was duplicative of the breach of oral contract claim; (b) it sought declaratory relief concerning Revolution, which was a party to only one alleged oral contract with Zakk, i.e., with regard to *xXx* and its sequel; and (c) there was no actual controversy concerning sequels that are wholly speculative.

In its demurrer, Revolution also argued that the statute of frauds barred Zakk's breach of oral contract claim, and that the declaratory relief claim failed because there was no existing actual controversy regarding speculative sequels. It also contended that the breach of oral contract claim failed because the first amended complaint did not include any specific allegations regarding the existence of the contract and thus was uncertain, nor did it include facts regarding the formation of the contract or consideration for the contract. Finally, it challenged the intentional interference with contractual relations claim (which was alleged only against Revolution) on two grounds: (1) the first amended complaint did not plead sufficient facts to show the existence of a valid contract and intentional wrongful acts to interfere with any contract; and (2) the claim was factually inconsistent with Zakk's allegations that Revolution entered into an oral agreement with him.

3. *Ruling*

The trial court sustained both demurrers with leave to amend. The court found that the alleged agreement--which the court identified as an agreement "for Plaintiff to be paid and credited for sequels merely because Plaintiff had developed or worked on the original films even if Plaintiff did not develop or work on the sequels"--was subject to the

13

statute of frauds because it was not to be performed within a year, since there was no definitive time for the agreement to terminate. (Citing *Tostevin v. Douglas* (1958) 160 Cal.App.2d 321, 328 (*Tostevin*).) The court rejected Zakk's argument that his allegation that he fully performed his obligations under the agreement was sufficient to defeat the statute of frauds bar; the court found that Zakk must also allege facts sufficient to establish an estoppel to assert the statute.

Although the court concluded that its finding regarding the statute of frauds applied to all causes of action alleged in the complaint because all of them were derivative of the contract claims, it also addressed defendants' other arguments. It rejected Diesel/One Race's and Revolution's arguments regarding the purported insufficiency of the allegations to support the breach of oral contract, breach of implied-in-fact, and declaratory relief causes of action. The court agreed, however, with Revolution's argument regarding the inadequacies of the allegations of intentional interference with contractual relations, and sustained Revolution's demurrer to that cause of action on this ground (as well as on the statute of frauds ground).

## C. *Second Amended Complaint*

### 1. *Allegations*

Zakk filed the second amended complaint on December 7, 2016. The only differences between the first amended complaint and the second amended complaint were found in three paragraphs: one in the background and general allegations section and two in the fourth cause of action for interference with contractual relations.

14

In the background and general allegations section, Zakk updated one paragraph to state that defendants "have recently produced a sequel to the original *xXx*, which was produced in 2002,"[4] and added factual allegations to establish estoppel to assert the statute of frauds. Among the facts alleged were that Zakk "fully performed all of his obligations under the alleged agreement," that his "performance as respects *xXx* was directly induced" by defendants' promise to provide him a producer fee and credit for any sequel starring Diesel, and that he "agreed to accept substantially less than what his services were worth in connection with his creating and developing the *xXx* film franchise based specifically" on defendants' promise with regard to any sequel starring Diesel.

In the intentional interference cause of action, Zakk added an allegation naming an individual at Revolution who knew about the oral agreement and its terms, and added additional language to another paragraph about Revolution's conduct that prevented Diesel/One Race's performance of the oral agreement.

### 2. *Demurrers*

Once again, Diesel/One Race and Revolution each filed a demurrer to the second amended complaint.

In their demurrer, Diesel/One Race argued that the alleged contracts were barred by the statute of frauds, and that Zakk failed to

---

[4]     The first amended complaint had alleged that defendants "are now in production of a sequel to *xXx*."

15

plead facts to support any exception to the statute of frauds. They contended that estoppel did not apply under the circumstances of this case because the rendition of personal services compensable in quantum meruit is an insufficient basis for estoppel, and because Zakk cannot claim that his personal services in connection with the original *xXx* film clearly related to the alleged contract regarding a speculative sequel. Finally, Diesel/One Race challenged the declaratory relief claim on the same grounds as previously asserted.

Revolution argued in its demurrer that the breach of oral contract claim was barred by the statute of frauds because Zakk did not allege facts sufficient to show that he would suffer an unconscionable injury, or that defendants would be unjustly enriched if the statute of frauds were applied. Revolution also argued that the declaratory relief claim failed because the underlying contract was barred by the statute of frauds, and that the intentional interference claim failed because Zakk did not allege facts sufficient to establish a valid contract or intentional wrongful acts by Revolution.

### 3. *Ruling*

Once again, the trial court sustained the demurrers with leave to amend. It found that Zakk's allegations that he was not fully compensated for his work on the original *xXx* film were insufficient to allege estoppel to assert the statute of frauds because he failed to allege facts showing that he provided services of an extraordinary or exceptional character. The court explained, "[s]tated differently, Plaintiff fails to allege facts why estoppel should be applied to permit

16

enforcement of the alleged contract instead of Plaintiff being required to pursue a quantum meruit claim." Based upon this finding, the court sustained the demurrers to all causes of action, but granted Zakk leave to amend, including leave to add an alternative quantum meruit claim. Although the court found that all causes of action were barred by the statute of frauds, it also specifically addressed, and rejected, Revolution's argument that Zakk failed to allege sufficient facts to state a claim for intentional interference with contractual relations.

D.    *Third Amended Complaint*

1.    *Allegations*

Sometime after Zakk filed his second amended complaint in December 2016, he received documents he had requested in requests for production that he had propounded at the inception of the lawsuit (which was filed in May 2016). One of those documents was a letter that Zakk contended constituted a written agreement or memorandum evidencing the terms of the alleged oral contract at issue, although one of those terms was somewhat different than the term he previously had alleged. He filed a third amended complaint that included several significant, and some less significant, changes from the previous complaints; many of those changes appear to be the result of Zakk's receipt of this discovery. The changes are as follows.

First, the third amended complaint added an introductory paragraph setting forth the nature of the action. It stated that the action arises out of defendants' "wrongful and unjustified refusal to credit and compensate . . . ZAKK, as agreed," for his services provided

17

to them "in connection with the *xXx* film franchise--a film franchise which ZAKK was instrumental in creating, developing, and bringing to fruition."

Second, the description of the nature of Zakk's relationship with One Race was slightly modified in the third amended complaint. Whereas the previous complaints alleged that Zakk ran and/or managed One Race, the third amended complaint alleged that he "worked for" One Race.

Third, the third amended complaint alleged that Zakk and Diesel/One Race entered into *several* different oral or implied-in-fact agreements--i.e., a different agreement for each film that Diesel starred in and Zakk worked on and/or helped develop. The complaint alleged that those agreements "generally provided" that for each film, Zakk would receive "[a] fee that ranged from approximately $200,000 to $275,000," and an executive producer or producer credit. With regard to the *xXx* film, the complaint alleged that Diesel/One Race and Revolution agreed that, in exchange for Zakk's services on the original *xXx* film, Zakk would receive compensation of at least $200,000 and no less than 125 percent of his then current quote, and executive producer credit on the *xXx* sequel starring Diesel.

Fourth, the third amended complaint alleged that the agreement with respect to *xXx* was memorialized in a writing signed by Diesel's agent and Revolution's agent. The complaint also included alleged language from that letter.

Fifth, the third amended complaint included additional allegations to support Zakk's position that the alleged agreement was

18

not barred under the statute of frauds. Those allegations included allegations (1) that Zakk "was instrumental in creating, developing, and bringing the *xXx* film franchise to fruition," and that the services he performed in connection with that franchise "were extraordinary and of an exceptional character in that, among other things, no one else could have performed [them]"; and (2) that the alleged oral or implied-in-fact agreement was an at-will agreement that could have been terminated at any time before Zakk fully performed his services in connection with the original *xXx* film.

Finally, the third amended complaint added two causes of action, one for quantum meruit and one for promissory estoppel. The quantum meruit cause of action alleged that defendants requested that Zakk perform services for their benefit in connection with the *xXx* film franchise and promised to pay Zakk the reasonable value of those services (which is alleged to be no less than $2 million), and that Zakk performed those services. The complaint alleged that within the past two years Zakk requested that defendants pay him the reasonable value of the services that he performed in connection with the *xXx* sequel, but they refused to do so. The promissory estoppel cause of action alleged that defendants promised Zakk that in exchange for the services he provided in connection with the original *xXx* film, Zakk would receive in connection with the *xXx* sequel the compensation and credit alleged, that defendants have not performed any part of their promise, and as a result of Zakk's reasonable reliance upon defendants' promises he has suffered substantial monetary damages.

19

2.    *Demurrers*

Diesel/One Race and Revolution each filed a demurrer to the third amended complaint, as well as a motion to strike the promissory estoppel cause of action and a request for judicial notice of (among other things) the document the complaint alleged memorialized the purported oral agreement.[5]

In their demurrer, Diesel/One Race argued that the third amended complaint was a sham pleading because (1) it alleged several different oral or implied-in-fact agreements rather than a single agreement; and (2) it contradicted the previously-alleged facts that Zakk generally was to be paid a fee ranging from $250,000 to $275,000, and that he was to be paid $275,000 for the *xXx* sequel, by now alleging that he generally was to be paid a fee ranging from $200,000 to $275,000, and was to be paid at least $200,000 and no less than 125 percent of his then current quote for the *xXx* sequel.

Diesel/One Race also argued that Zakk's amendments failed to cure the previously-identified defects with regard to application of the statute of frauds, and that the writing identified in the third amended complaint was insufficient to take the alleged oral agreement out of the statute of frauds.  With regard to the writing, Diesel/One Race asserted that it not only directly contradicted the terms of the agreement alleged in the earlier complaints, but that Zakk misrepresented the actual

---

[5]    The document at issue, which was produced under a protective order, was filed under seal.

20

language of the letter (of which Diesel/One Race asked the court to take judicial notice).

Finally, Diesel/One Race challenged the newly-added causes of action for quantum meruit and promissory estoppel. They contended that the quantum meruit cause of action was barred by the two-year statute of limitations. They argued that the statute begins to run on a quantum meruit claim alleging a promise to pay for personal services when those services are terminated. Thus, because Zakk's services on the original *xXx* film terminated in 2002, the statute of limitations expired in 2004. With regard to the promissory estoppel cause of action, Diesel/One Race's challenge was two-fold. They contended it was improperly added without leave of court (which was the basis of their motion to strike), and they argued that it failed on the merits as a matter of law.

Revolution made similar arguments in its demurrer. It argued (in a footnote) that the third amended complaint was a sham pleading because it changed the amount of the fee he was to receive for the *xXx* sequel under the alleged contract; it did not argue that the change in the number of contracts alleged rendered the complaint a sham pleading. It contended that the complaint failed to allege sufficient facts to support estoppel to assert the statute of frauds. It also asserted that the alleged writing was insufficient to take the oral agreement out of the statute of frauds, and that the complaint mischaracterized the

writing.[6] And, like Diesel/One Race, it argued the quantum meruit cause of action was barred by the statute of limitations, and challenged the promissory estoppel cause of action on the merits and on the ground that Zakk was not given leave to amend to allege such a claim.

### 3. *Ruling*

Over Zakk's objection, and following additional briefing and a separate hearing on the issue, the trial court granted defendants' requests for judicial notice of the alleged writing. The court then sustained defendants' demurrers without leave to amend.

The court found that the third amended complaint was a sham pleading because it alleged there were multiple oral contracts, as opposed to one contract as previously alleged.[7] It observed that

---

[6] As noted, Revolution also asked the trial court to take judicial notice of the document referenced in the complaint. In its request for judicial notice, Revolution submitted two versions of the document; one was identical to the one submitted by Diesel/One Race (except for the Bates number), and the other was that same document with handwritten notations on it.

[7] At oral argument, counsel for Revolution asserted that the trial court also found that the third amended complaint was a sham pleading because it changed the allegation regarding the amount of compensation Zakk was to receive for the *xXx* sequel. That is not correct. In its ruling, the court stated: "Defendants contend that the demurrer should . . . be sustained because the [third amended complaint] is a sham pleading. Specifically, Defendants assert that the [third amended complaint] (1) now alleges the existence of multiple oral contracts . . . and (2) alleges different compensation . . . . [¶] The Court agrees *in part*. The allegation that [Zakk] entered into several contracts, as opposed to one contract as previously alleged . . . is clearly an attempt by [Zakk] to engineer the [third amended complaint] to escape the reaches of a demurrer." (Italics added.) The court then discussed only the

22

"Plaintiff consistently alleged the existence of one oral or implied-in-fact contract, but suddenly, and without reference to any reason for the change, asserts the existence of multiple contracts." The court found that this change was "clearly an attempt by Plaintiff to engineer the [third amended complaint] to escape the reaches of a demurrer," and concluded that this was a sufficient basis to sustain the demurrer or strike the complaint.

In addition, the court found that the writing quoted in the third amended complaint was insufficient to take the alleged oral contract out of the statute of frauds and, for the reasons stated in its rulings on the prior demurrers, that the complaint failed to allege facts sufficient to establish an estoppel to assert the statute. Finally, the court found that the quantum meruit cause of action was barred by the statute of limitations, which began to run in 2002, when Zakk performed the services on the original *xXx* film, and it sustained the demurrer to the promissory estoppel cause of action on the ground that it was added without leave of the court.[8]

The court entered a judgment of dismissal, from which Zakk timely filed a notice of appeal.

---

allegation of multiple contracts, thus impliedly rejecting the other ground defendants asserted.

[8] On the day of the hearing on the demurrer, Zakk filed fictitious name amendments to the complaint to add One Race Productions, Inc.; Revolution Production Services, LLC; and Revolution Films. The trial court ordered them stricken without prejudice.

## DISCUSSION

Zakk raises several contentions on appeal, only some of which we will need to address. He contends the trial court erred in finding that the third amended complaint was a sham pleading, erred in finding that the breach of oral contract, breach of implied-in-fact contract, intentional interference with contractual relations, and declaratory relief claims (collectively, the contract claims) were barred by the statute of frauds, erred in finding that the quantum meruit claim was barred by the statute of limitations, and abused its discretion in dismissing the promissory estoppel claim. We agree as to all but the dismissal of the promissory estoppel claim. In light of that, we need not address Zakk's contentions regarding the trial court's granting defendants' requests for judicial notice, refusal to consider Zakk's offer of proof made with respect to those requests, and his request for leave to amend.[9]

A.  *Standard of Review Governing Judgment Sustaining Demurrers*

"On appeal from a judgment sustaining a demurrer to a complaint the allegations of the complaint must be regarded as true. The court must, in every stage of an action, disregard any defect in the pleadings which does not affect the substantial rights of the parties. [Citation.] Pleadings must be reasonably interpreted; they must be read as a whole

---

[9]  Zakk also challenges the trial court's ruling striking his fictitious name amendments, which were filed the day of the hearing on the demurrers to the third amended complaint. We need not address this issue because that ruling was without prejudice, so Zakk is not precluded from filing the amendments when the matter is remanded to the trial court.

24

and each part must be given the meaning that it derives from the context wherein it appears. . . . In determining whether the complaint is sufficient as against the demurrer on the ground that it does not state facts sufficient to constitute a cause of action, the rule is that if on consideration of all the facts stated it appears the plaintiff is entitled to any relief at the hands of the court against the defendants the complaint will be held good although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged. In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties. While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms." (*Gressley v. Williams* (1961) 193 Cal.App.2d 636, 638-639.)

B. *Sham Pleading*

Under the sham pleading doctrine, "[i]f a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations." (*Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 151.) Where no explanation for an inconsistency is

25

offered, the trial court is entitled to conclude that the pleading party's cause of action is a sham and sustain a demurrer without leave to amend. (*Amid v. Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383, 1390-1391.)

As noted, Diesel/One Race argued in their demurrer to the third amended complaint that the complaint was a sham pleading for two reasons: it alleged there were multiple contracts (one for each film) rather than a single contract (applicable to all films), and it changed the range of compensation Zakk was to receive for sequels generally and the compensation for the *xXx* sequel specifically. (In its demurrer, Revolution argued, in a footnote, only the latter.) The trial court rejected Diesel/One Race's second (and Revolution's only) reason, finding that the third amended complaint was a sham pleading solely because it asserted that there were several oral contracts, whereas the prior complaints "consistently alleged the existence of one oral or implied-in-fact contract."[10]

On appeal, Zakk contends the trial court's finding was erroneous because the original, first amended, and second amended complaints

---

[10] The trial court's rejection of defendants' argument that the amendment to change the compensation term was proper. As Zakk explained in his oppositions to the demurrers, he amended the compensation term due to his recent receipt of discovery, including the written memorandum that allegedly set forth the compensation he was to receive for any *xXx* sequel. In light of the many years that had passed from the time he entered into the alleged agreement and the time he filed this lawsuit, the change in the allegation does not "'carr[y] with it the onus of untruthfulness.'" (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 946.) Rather, it simply reflects a faulty recollection.

consistently had alleged multiple oral contracts.  We conclude that although the allegations in the prior iterations of the complaint were not as clear as the third amended complaint with regard to alleging multiple oral contracts, we agree that taken in context, the prior versions did allege more than one contract.

There is no question that the prior versions of the complaint alleged a single overarching oral or implied-in-fact contract in which Diesel/One Race agreed that "for each" film that Diesel starred in and Zakk helped to develop and/or worked on, Zakk would receive a producer or executive producer fee and credit.  Nor is there any question that the third amended complaint no longer alleges that overarching contract, and instead alleges there were separate oral or implied-in-fact contracts for each film.  But read in context, the allegations of the overarching contract in the prior complaints implied it was a contract to enter into separate contracts with respect to each film, because it alleged a range of compensation and credits.  Thus, it implied that the exact fee and credit Zakk would receive had to be agreed upon for each film.  In other words, there would be a separate agreement for each film with the same general terms as alleged in the overarching contract, but with the specific compensation and credit to be given for that film.  That this is a plausible interpretation of the allegations of the prior complaints was implicitly acknowledged by Diesel/One Race in their demurrer to the original complaint, when they asserted the complaint was uncertain because, among other things, it was "uncertain whether [Zakk] has alleged one contract or several[,] and under which contract(s) his claims arise."

27

But even if the prior complaints did not impliedly allege separate contracts for every one of the films that Zakk helped develop and/or worked on, there is no question that each of the previous versions of the complaint expressly alleged an oral or implied-in-fact contract specifically with respect to the *xXx* film and its sequel. For example, in the original complaint, Zakk alleged in paragraph 15: "That picture [i.e., *Strays*, produced in 1997] was followed in 2002 with *xXx*. ZAKK worked on and helped develop *xXx*. Accordingly, with respect to *xXx* and any sequel of *xXx* which would be starring and produced by DIESEL, Defendants DIESEL, ONE RACE FILMS, and/or REVOLUTION STUDIOS (the production company) agreed to provide ZAKK with an Executive Producer credit and $275,000 executive producing fee in exchange for his services." (Italics added.) In the first and second amended complaints, Zakk alleged *two* separate agreements with regard to *xXx* and its sequel, one with Diesel/One Race (in paragraph 16) and one with Revolution (in paragraph 17).

Because the focus of Zakk's complaint has been, from the start and throughout the amended complaints, on the alleged agreement with respect to *xXx* and its sequel, the omission from the third amended complaint of the allegation of the overarching agreement has no practical effect.[11] If anything, the amended pleading merely clarifies

---

[11] The only possible exception is the declaratory relief cause of action, because after the trial court sustained Diesel/One Race's demurrer to that cause of action in the original complaint on the ground that it only sought a declaration as to the parties' rights and obligations with respect to the *xXx* sequel, the cause of action was amended to seek a declaration of rights with regard to any qualifying sequels of films that Zakk helped develop and/or

the basis for Zakk's claims for relief. Therefore the sham pleading doctrine does not apply. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751 ["The doctrine is not intended to prevent honest complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts"].)

C.    *Statute of Frauds*

Zakk contends the trial court erred in finding the contract causes of action were barred by the statute of frauds. He argues the statute does not apply because (1) the third amended complaint alleged the oral contract was terminable at will, and therefore it could be performed within a year; (2) the complaint alleged he had fully performed all of his obligations under the contract; and (3) the complaint alleged a written memorandum that memorialized the oral agreement. Zakk also contends that, even if the statute of frauds applied, the third amended complaint alleged facts sufficient to establish that defendants were estopped to assert the statute of frauds. We agree that the statute of frauds does not apply under the allegations of the third amended complaint.

---

worked on. However, given our conclusion that the allegations of the previous complaints implied that there were separate contracts with respect to each film, the third amended complaint's omission of the allegation of an overarching contract coupled with the addition of express allegations of separate contracts for each film cannot trigger the sham pleading doctrine.

The statute of frauds, as memorialized in Civil Code[12] section 1624, sets forth several categories of contracts that "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent." (§ 1624, subd. (a).) The defendants contend, and the trial court found, that the contract at issue in this case falls within the category described in subdivision (a)(1), i.e., "[a]n agreement that by its terms is not to be performed within a year from the making thereof." (§ 1624, subd. (a)(1).)

In finding the alleged agreement was one that was not to be performed within a year, the trial court relied upon *Tostevin, supra,* 160 Cal.App.2d 321. In that case, the court of appeal held that an oral contract with no termination date, in which the defendant agreed to pay the plaintiff a certain sum weekly for services in connection with a television show, was an agreement not to be performed within a year. The appellate court explained, "[s]ince it is clear from the pleadings that payment was to continue so long as the program was broadcast throughout the world, the parties must have contemplated that the continued performance of the contract was to last more than one year from the date of making, as indeed it did." (*Id.* at p. 328.) Defendants contend the contract alleged in this case is similar to the contract at issue in *Tostevin* because it is evident that the parties intended it was to be performed over a period longer than a year, inasmuch as it covers sequels, which could not have been produced within a year.

---

[12] Further undesignated statutory references are to the Civil Code.

Zakk contends that *Tostevin* is distinguishable because the plaintiff in that case alleged in his verified complaint that the contract at issue was to continue for "'an indefinite period,'" while the third amended complaint in the present case alleged that the contract was an at-will contract that could be terminated at any time. (Citing *Tostevin*, *supra*, 160 Cal.App.2d at p. 326.) He argues that under the Supreme Court opinions in *White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336 and *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, when an alleged oral contract may be terminated at will by either party, it is capable of being performed within a year and therefore it is not within the statute of frauds. Defendants respond that those cases are not applicable here because, unlike in this case, they involved straight-forward employment contracts. We need not determine whether the contract alleged in this case was capable of being performed within a year because even if it could not, there is a different ground for concluding that the statute of frauds does not apply.

Zakk contends that his allegation that he fully performed all of his obligations under the contract takes the contract out of the statute of frauds. (Citing, among other cases, *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 556 (*Secrest*) ["'Where the contract is unilateral, or, though originally bilateral, has been fully performed by one party, the remaining promise is taken out of the statute [of frauds], and the party who performed may enforce it against the other'"], quoting 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 370, p. 414.) Defendants argue that full performance

31

by itself is not sufficient to take the contract out of the statute and that Zakk also must allege facts showing such unusual and extraordinary circumstances that the equitable doctrine of estoppel applies to bar the assertion of the statute. They are mistaken.

We acknowledge that most of the cases defendants rely upon in support of their argument (and that the trial court cited in its ruling) held that the plaintiffs must show more than full performance in order to avoid the statute of frauds.[13] But all but four of those cases involved oral contracts to make a will (or to devise property in a will) or contracts not to be performed during the lifetime of the promisor. (See, e.g., *Day v. Greene* (1963) 59 Cal.2d 404, 406 [contract to devise property in will]; *Di Salvo v. Bank of America* (1969) 274 Cal.App.2d 351, 353 [contract to make a will]; *Dini v. Dini* (1961) 188 Cal.App.2d 506, 513 [contract not to be performed during promisor's lifetime]; *Palmer v. Phillips* (1954) 123 Cal.App.2d 291, 292 [contract to make a will]; *Jirschik v. Farmers & Merch. Nat. Bank* (1951) 107 Cal.App.2d 405 [contract to devise

---

[13] In some of the cases defendants cite, the courts used language of estoppel in finding that the statute of frauds did not apply, but they did not hold that facts sufficient to support estoppel are *required* when full performance is alleged. (See, e.g., *Dougherty v. California Kettleman, etc.* (1937) 9 Cal.2d 58, 81 (*Dougherty*) ["the circumstances of this case, showing as they do complete performance by Dougherty, clearly create an estoppel to plead the statute. Dougherty's performance was clearly induced by Ochsner's representation that he would sign the contract. This creates an estoppel"]; *Tobola v. Wholey* (1946) 75 Cal.App.2d 351, 357 ["In any event, to permit appellant at this late date, when the agreement in question has been performed in its entirety by respondent, to rely on the defense of the statute of frauds would be manifestly unfair to respondent and would allow the appellant to be enriched unjustly at his expense"].)

property in a will]; *Walker v. Calloway* (1950) 99 Cal.App.2d 675, 676 [contract to devise property in will]; *Baker v. Bouchard* (1932) 122 Cal.App. 708, 709 [contract to devise property in a will].) Those contracts, which fall under different contract categories in the statute of frauds,[14] are treated differently than contracts that fall under subdivision (a)(1) of section 1624.

The section of the Restatement Second of Contracts describing the applicability of the statute of frauds on contracts not to be performed within a year states: "(1) Where any promise in a contract cannot be fully performed within a year from the time the contract is made, all promises in the contract are within the Statute of Frauds until one party to the contract completes his performance. [¶] (2) When one party to a contract has completed his performance, the one-year provision of the Statute does not prevent enforcement of the promises of other parties." (Rest.2d, Contracts, § 130.) Comment d to this section further explains: "If either party promises a performance that cannot be completed within a year, the Statute applies to all promises in the contract, including those which can or even must be performed within a year. But *unlike other provisions of the Statute*, the one-year provision does not apply to a contract . . . which has been fully performed on one

---

[14]    A contract that is not to be performed during the lifetime of the promisor falls under section 1624, subdivision (a)(5). A contract to make a will or devise property in a will made before 1985 fell under former section 1624, subdivision (6); such a contract made currently is governed by Probate Code section 21700. (14 Witkin, Summary of Cal. Law (11th ed. 2017) Wills and Probate, § 358, p. 437.)

side, whether the performance is completed within a year or not." (Rest.2d, Contracts, § 130, comment d, italics added.)

The California Supreme Court followed this rule in *Dougherty*, *supra*, 9 Cal.2d 58 and *Dutton v. Interstate Investment Corp.* (1941) 19 Cal.2d 65 (*Dutton*). In *Dougherty*, the plaintiff sought to enforce against the defendant an oral contract (which was reduced to writing, but the defendant's predecessor never signed it) in which the defendant's predecessor agreed to pay the plaintiff, in exchange for the plaintiff's services in locating lands and obtaining prospecting permits, a royalty in any oil or gas produced from lands embraced within the prospecting permit. (*Dougherty*, *supra*, 9 Cal.2d at p. 64.) The plaintiff located the lands and obtained the permits, but the defendant refused to pay the agreed-upon royalty. The Supreme Court rejected the defendant's contention that enforcement of the contract was barred by the statute of frauds. The Court stated: "The fact that the agreement between Dougherty and [the defendant's predecessor] rested in parol is of no legal significance in this case. This agreement was fully executed by Dougherty. Assuming the contract could not be performed within a year and therefore fell within the statue of frauds, the circumstances of this case, showing as they do complete performance by Dougherty, clearly create an estoppel to plead the statute. Dougherty's performance was clearly induced by [the defendant's predecessor's] representations that he would sign the contract. This creates an estoppel." (*Id.* at p. 81.) Thus, although the Court in *Dougherty* spoke in terms of estoppel, it did not require the plaintiff to show anything

34

more than his full performance in reliance on the promise of the defendant.

In *Dutton*, the plaintiff (Dutton), and two others entered into an oral agreement in which Dutton and one of the others would obtain, on behalf of a corporation controlled by the third person, a lease and permit for oil development on land Dutton located, and the three parties would share any profits from the development. When the corporation assigned the permit to another company for consideration, it refused to share any portion of the consideration with Dutton. The Supreme Court rejected the corporation's argument that the statute of frauds barred Dutton from enforcing the oral contract because it was not intended to be performed within a year. The Court stated, "Assuming that the agreement in the present case falls within this provision of the statute of frauds, the finding of the trial court that Dutton had fully performed all of his obligations under the contract operates to remove the bar of the statute." (*Dutton, supra*, 19 Cal.2d at p. 70.) The Court cited to, among other authorities, section 198 of the original Restatement of Contracts in support of its statement that full performance removes the statute from the statute of frauds. That section provides: "Where any of the promises in a bilateral contract cannot be fully performed within a year from the time of the formation of the contract, all promises in the contract are within Class V of § 178 [which sets out classes of contracts within the statute of frauds], unless and until one party to such a contract completely performs what he has promised. When there has been such complete performance, none of the promises in the contract is within Class V." (Rest. Contracts, § 198.)

35

In contrast to oral contracts that are not to be performed within a year, oral contracts to make a will or devise property in a will consistently have been subjected to stricter application of the statute of frauds. The reason for the stricter application was noted by the California Law Revision Commission in its report recommending legislation that resulted in the repeal from section 1624 of the oral contract to devise property in a will provision and enacting a specific statute of frauds for such contracts as part of the Probate Code. The Commission observed: "Where an oral agreement to make or not to revoke a will is alleged after promisor is deceased and unable to testify, there is an opportunity for the fabrication of testimony concerning the existence of the agreement. Sound policy requires some form of written evidence that such an agreement actually exists." (16 Cal. Law Revision Com. Rep. (1982) pp. 2348-2349, fns. omitted.)

This concern about fabrication of testimony is significantly lessened in a case such as this one, where all parties to the alleged contract are able to testify as to its existence or nonexistence. Thus, we conclude that the holdings of cases involving oral contracts to make a will or devise property in a will, which require evidence of unusual and extraordinary circumstances to support application of estoppel regardless whether there was full performance by one party, do not apply here.

We also conclude that the holdings of two other cases that defendants rely upon--*Secrest, supra,* 167 Cal.App.4th 544 and *Denio v. Brennecke* (1935) 6 Cal.App.2d 678, 680 (*Denio*)--similarly do not apply here because they both involve provisions of the statute of frauds other

36

than the "not to be performed within a year" provision. The alleged oral contract in *Secrest* was a forbearance agreement that purportedly modified a promissory note and deed of trust. The alleged oral contract in *Denio* was an agreement by the defendants to give the plaintiffs an interest in oil rights in the defendants' land in exchange for the plaintiffs' legal services. The courts in both cases found that the contracts came within the provision of section 1624 governing agreements for the sale of real property or an interest in real property. (*Secrest, supra,* 167 Cal.App.4th at pp. 552-553; *Denio, supra,* 6 Cal.App.2d at pp. 680-681.) Thus, neither court addressed the provision governing contracts not to be performed within a year.

Although the remaining two cases defendants rely upon for their argument that full performance is not sufficient by itself to take an oral contract out of the statute of frauds involved contracts under the "not to be performed within a year" category, neither applies here.

In *Gressley v. Williams, supra,* 193 Cal.App.2d 636, the appellate court rejected the plaintiff's argument that his full performance of an oral contract not to be performed within a year took the contract out of the statute of frauds. The court observed that "[t]he mere rendition of services is not usually such a part performance of an oral contract as will relieve the contract from the operation of the statute." (*Id.* at p. 641.) The only support the court gave for this statement, however, was *Kobus v. San Diego Trust & Savings Bank* (1959) 172 Cal.App.2d 574, which involved an oral contract to make a will. Thus, we find *Gressley* unpersuasive on this point.

The other case involving a contract not to be performed within a year, *Ruinello v. Murray* (1951) 36 Cal.2d 687 is inapposite because it involved partial, rather than full, performance of the contract at issue. In that case, the alleged oral contract was for five years, but the parties ended the relationship after three years. Thus, the Supreme Court did not address the effect of full performance on the statute of frauds; the only issue raised and discussed was whether the plaintiff had alleged facts sufficient to establish estoppel to assert the statute. We agree with the court of appeal in *Nesson v. Moes* (1963) 215 Cal.App.2d 655, which found that "*Ruinello* is peculiarly within the area of the law relating to estoppel," and therefore is not applicable to a case in which the plaintiff alleges he fully performed all of his obligations under an oral contract that falls under the "not to be performed within a year" provision of the statute of frauds. (*Id.* at p. 658.)

In short, we hold that Zakk's allegation that he fully performed all of his obligations under the alleged oral or implied-in-fact contract was sufficient to take the contract out of the statute of frauds. In light of our holding, we need not address Zakk's other arguments related to the statute of frauds, including whether the trial court properly took judicial notice of the letter defendants submitted or whether the court erred in failing to consider the materials Zakk submitted in response to defendants' submission and in support of his offer of proof.

D. *Quantum Meruit*

Defendants' demurrer to the quantum meruit cause of action alleged in the third amended complaint, and the trial court's ruling

sustaining those demurrers, were based on the ground that the two-year statute of limitations began to run when Zakk's services with respect to the original *xXx* film ended in 2002, and therefore the claim, brought in 2017, was time-barred. Zakk contends on appeal that the trial court erred in sustaining the demurrers on this ground because (1) Code of Civil Procedure section 339, subdivision (1), which sets forth the statute of limitations, expressly states that the cause of action shall not be deemed to have accrued until the aggrieved party discovers the loss or damage; and (2) a quantum meruit claim does not accrue until the repudiation or breach of the oral promise upon which it is based, which in the present case did not occur until the *xXx* sequel was released in 2017.

Zakk's first contention is based upon a misreading of Code of Civil Procedure section 339, subdivision (1). That statute provides, in relevant part, that it applies to "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing . . . ; or an action founded upon a contract, obligation or liability, evidence by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability *evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance* shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." (Italics added.) As is clear from the italicized language, the discovery of damages provision does not apply to the facts of this case, because the contract at issue is not alleged to have been evidenced "by a certificate, or abstract or guaranty of title of

39

real property or policy of title insurance." Thus, Zakk's first contention fails.

Zakk's second contention, however, is well taken. Although the statute of limitations on a cause of action for quantum meruit for personal services usually begins to run when those services or the relationship between the parties terminate (see, e.g., *Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 452-454), that is not always the case. Where services are provided with the understanding that payment for those services will be made at some time after the termination of those services or upon some contingency, the statute of limitations does not begin to run until that time arrives or contingency occurs. (See, e.g., *Fracasse v. Brent* (1972) 6 Cal.3d 784, 791-792 [attorney was hired under a contingency fee agreement and discharged by client without cause; "the attorney's [cause of] action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred"]; *Thompson v. Ruiz* (1901) 134 Cal. 26, 28 [the plaintiff provided services for the promisor, and parties agreed he would be paid upon the promisor's sale of certain land; Supreme Court held that "the statute of limitations did not begin to run against plaintiff's claim until it matured and could be enforced, . . . regardless of whether the time fixed was reasonable or unreasonable"].)

In the present case, Zakk alleged that defendants agreed to pay him the reasonable value of the services he performed "when the *xXx Sequel* was released." He also alleged that the sequel was released "on or about January 20, 2017." Therefore, the two-year statute of limitations on his quantum meruit cause of action did not begin to run

40

until January 20, 2017, and the trial court erred in finding that his claim, filed on March 17, 2017, was time-barred.[15]

E.    *Promissory Estoppel*

As noted, the trial court sustained defendants' demurrers to Zakk's promissory estoppel cause of action on the ground that he added it without leave of court.  Zakk contends the court's ruling was in error because his "new cause of action for promissory estoppel responds directly to the Court's reasoning for sustaining the Demurrers to the [second amended complaint]."  We conclude the trial court did not abuse its discretion in dismissing the cause of action.

"Following an order sustaining a demurrer or a motion for judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order. [Citation.]  The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend." (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.)

In this case, when the trial court sustained the demurrers to the second amended complaint on statute of frauds grounds, it granted Zakk leave to amend, and specifically granted him leave to add a quantum meruit cause of action.  Zakk argues that even though the

---

[15]    Because defendants did not challenge Zakk's quantum meruit claim on the merits in their demurrers or their respondents' briefs, we do not address the merits here.

court did not directly give him leave to add a promissory estoppel cause of action, he was allowed to do so because that cause of action "directly responds to the Trial Court's concerns" regarding the statute of frauds because promissory estoppel is not subject to the statute. We disagree. The granting of leave to amend after a demurrer is sustained on one ground does not give the plaintiff a license to add any possible cause of action that might not be subject to dismissal on that ground. Otherwise, there would be virtually no limitation on amendments following the sustaining of a demurrer.

Because Zakk did not obtain leave from the trial court to amend his complaint to add a promissory estoppel cause of action, we affirm the judgment of dismissal with respect to that cause of action.

## DISPOSITION

The judgment is affirmed to the extent it dismissed the cause of action for promissory estoppel, and reversed with respect to the remaining causes of action. Zakk shall recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**

WILLHITE, Acting P. J.

We concur:

COLLINS, J.              CURREY, J.

42